THE STATE OF IOWA, Appellee, v. BENJAMIN HART, Appellant.

Intoxicating Liquors: ILLEGAL SALE: AGENCY: EVIDENCE. A wholesale liquor firm, of which the defendant was a member, entered into a written agreement with one G. whereby the latter was appointed their agent at the town of O. for the purpose of receiving, handling, and delivering their goods and merchandise. The defendant having been indicted, as one of the principals of G., for maintaining a liquor nuisance in the town of O., it was shown that, notwithstanding the above agreement, the liquors sold by G. upon the premises in question were in fact purchased by him, that he rendered no account of the sales to said firm, nor did they have any interest in the proceeds of such sales. *Held*, that a verdict finding the defendant guilty was erroneous.

*Appeal from Mitchell District Court.*—HON. JOHN C. SHERWIN, Judge.

WEDNESDAY, JANUARY 20, 1892.

THE defendant appeals from a judgment of conviction upon an indictment for keeping and maintaining a nuisance by carrying on the unlawful sale of intoxicating liquors in a certain building in the city of Osage. *Reversed.*

*G. E. Marsh*, for appellant.

*John Y. Stone*, Attorney General, and *Thomas A. Cheshire*, for the State.

ROTHROCK, J.—It appears from the evidence that for some two weeks in the last days of July and first

days in August, 1890, one E. B. Gilliam kept and sold intoxicating liquors in a building owned by his wife, which building is situated in the city of Osage. It is not claimed in behalf of the state that there were any liquors sold by Gilliam except in the original packages. All of the liquors kept by him were furnished to him by a partnership known under the name of Hart & Conner. This partnership was engaged in business as wholesale and retail liquor dealers at the town of Lyle, in the state of Minnesota; and all the liquors kept and sold by Gilliam were shipped by Hart & Conner from Lyle to Gilliam, at Osage. The defendant Hart is a member of the partnership of Hart & Conner. It is claimed in behalf of the state that Gilliam was the mere agent of Hart & Conner in carrying on the alleged unlawful traffic at Osage, and that, as the defendant and his partner were principals in the business, they are each liable for maintaining the alleged nuisance at Osage. It appears from the evidence that on the twenty-third day of July, 1890, Gilliam and Hart & Conner entered into an agreement in writing in these words:

"*To all whom it may concern:* This is to certify that the undersigned have this day constituted and do hereby appoint E. B. Gilliam, of Osage, Mitchell county, Iowa, our agent at that place for the purpose of receiving, handling, and delivering our goods and merchandise, *i. e.*, spirituous, vinous, and malt liquors, in original packages only. Dated at Lyle, Minnesota, this twenty-third day of July, 1890.

"HART & CONNER.<br>"E. B. GILLIAM."

It appears that the family of the defendant resided at Osage, but that the defendant devoted the greater part of his time to his business at Lyle. The fact that his family resided at Osage is unimportant in the view which we take of this appeal. The important question is, did the defendant Hart have any connection, as

principal or otherwise, with the traffic in liquor carried on by Gilliam in the building owned by his wife in Osage? Or, rather, was there sufficient evidence of his connection with the business to warrant a verdict of guilty?

The written instrument above set out was introduced in evidence. Upon its face it undoubtedly creates an agency, and the defendant Hart is one of the principals. But it is important to consider further evidence in determining whether the business was carried on under that agency. The only evidence introduced by the state upon that feature of the case was the testimony of Gilliam. He testified as follows in his examination in chief:

"*Q.* Whose intoxicating liquors were they that you sold in that place of business? *A.* I don't know as I can answer that question."

The witness was then shown the written contract, above set out, and the same was introduced in evidence. His examination as a witness then proceeded as follows:

"*Q.* State whether or not you dealt in intoxicating liquors as the agent of this firm of Hart & Conner [of which defendant was a member] in accordance with the terms of that contract, and as their agent. *A.* I did.

"*Q.* What intoxicating liquors did you deal in? *A.* I had beer, gin and whiskey, and which I sold.

"*Q.* That was assigned to you under this contract of agency at that place of business in Osage, Iowa, Mitchell county, and under and by virtue of the terms of the contract? *A.* I think I did.

"*Q.* Where did you make these sales? (Objected to by defendant as incompetent, irrelevant, and nothing in Exhibit A authorizing witness to sell. Overruled. Defendant excepts.) *A.* On Main street, in building that belongs to my wife. My wife owned the building

at the time.   Three rooms down stairs.   Liquor that I sold was drank on the premises.

"*Q.* How long did you continue to sell intoxicating liquors furnished to you by this firm under the terms of that contract?   (Objected to by defendant as immaterial and irrelevant.   Objection overruled.   Defendant excepts.)   *A.* I think somewhere about two weeks.   I settled with defendant Hart for the liquors.   Made two or three settlements at Lyle.   Don't think I settled in this county for any of these liquors that were sold.   My settlements were made in Lyle.

"*Q.* What is the business of this firm of Hart & Conner in Lyle, Minnesota?   *A.* Saloon keepers, I think. They are dealers at wholesale and at retail in intoxicating liquors.   During the time I was in business, think the defendant was in once or twice; just in a minute.   I remember one Saturday night, probably ten minutes.

"*Cross-examination:*   In summer of 1890 I was charged before a magistrate, and brought before him, for selling original packages at this same place.

"*Q.* Is not that prosecution still pending against you?   (Objected to by state, incompetent, immaterial; record best evidence.   Sustained.   Defendant excepts.) *A.* I do not mean to testify on direct examination that defendant Hart individually runs a saloon in Lyle. The only saloon that I know anything about with which defendant is connected is the saloon or place of business of Hart & Conner.   Exhibit A is the only instrument of the kind which I received from Hart & Conner.   It is the only contract or understanding that I ever had with them, and I have done business under no other arrangements with them:

"*Q.* Was the defendant Hart or Conner or Hart & Conner in any way interested in this building which you occupied during this time?   *A.* Not that I know

of; no, sir. They had no interest in that property. It belongs to my wife. They paid no rent at that time.

"Q. Where did you make the purchase of the liquors which you say you sold? A. Up to Lyle.

"Q. And you paid for it at Lyle, didn't you? A. Yes, sir.

"Q. They were shipped to you at Osage, in your own name, were they not? A. I think they were.

"Q. You paid the freight yourself, did you not? A. I did.

"Q. Now, did Hart & Conner, or defendant Hart have any interest in the profits which you made in that business? A. No, sir.

"Q. Did they share any losses with you? A. No, sir.

"Q. Did they pay you anything for running that business, keeping that place? A. They didn't.

"Q. Isn't it true as a matter of fact that Hart & Conner or defendant Hart had·nothing whatever to do with the place which you kept? A. I don't think they did.

"Q. You bought your liquor of them, and paid them for it at Lyle? A. Yes, sir.

"Q. And that's all there was of it, so far as Hart & Conner or defendant Hart was concerned? A. That's all I remember of.

"Q. You never rendered to Hart & Conner any account of sales that you made, did you? A. I don't think I did; no, sir."

At the conclusion of the introduction of the evidence for the state, counsel for the defendant moved that the defendant be discharged because there was no evidence of his guilt. The motion was overruled. The defendant was then introduced as a witness, and testified upon the question as to his connection with the business as follows:

"During the last year since July 1, 1890, I have not had anything to do with the liquor business in the

state of Iowa or in this county.  I know E. B. Gilliam.
Our firm shipped goods to him.  These goods were
purchased at Lyle, Minnesota.  I did not own any of
these goods alone.  They belonged to Hart & Conner,
the firm.  The firm received the money for the goods

"*Q.* State whether or not the firm of Hart & Conner
or yourself individually had anything to do with the
keeping of the place kept here in the summer of 1890
by E. B. Gilliam.  *A.* No, sir."

In his cross-examination the defendant testified as
follows:

"*Q.* You say you had nothing whatever to do with
running that business by Gilliam, do you?  *A.* No, sir.

"*Q.* Wasn't he agent of your firm, Hart & Con-
ner?  *A.* Supposed to be.

"*Q.* Wasn't he?  *A.* I don't know how to answer
the question.

"*Q.* Was he not the agent of the firm of Hart &
Conner?  *A.* No, sir..

"*Q.* For the purpose of handling intoxicating
liquors in Osage?  *A.* No, sir.

"*Q.* Was he the agent of that firm for any purpose?
*A.* No, sir.  Gilliam purchased liquors of our firm at
Lyle, and paid for them at Lyle; made all the settle-
ments at Lyle.  I did not know where the liquors were
to be sold.

"*Q.* You didn't have any idea where they were to
be sold?  *A.* I had a sort of idea.

"*Q.* What sort of idea did you have about it?
(Objected to by defendant as immaterial, and beyond
the examination in chief.  Objection overruled.
Defendant excepts.)  *A.* I had an idea they were to
be sold here.

"*Q.* Did you understand that you had anything to
do with the sale of those liquors at Osage?  *A.* No, sir.
I did undertand that Gilliam was our agent, or the
agent of the firm, to handle those liquors."

In our opinion, the jury should have returned a verdict of not guilty. It is true that on the face of the paper there was an agency, but, when the transaction is explained by the parties thereto, no agency existed. The only connection that the defendant had with the business was that the firm of Hart & Conner sold the liquors to Gilliam, and Gilliam paid for them. They were purchased and paid for by Gilliam at Lyle, and he sold them as his own, rendered no account of sales to Hart & Conner, and they had no interest whatever in the proceeds of the sales. It is true that in his examination in chief Gilliam stated that he dealt in intoxicating liquors as the agent of Hart & Conner in accordance with the terms of the written contract; but when he came to give the details he testified in effect that there was no agency in fact. The most that can be said of this witness is that he made contradictory statements on the witness stand. But his last statement detailed the real relations between the parties to the written instrument. No one ought to be convicted of a crime upon such testimony, and when the evidence introduced upon the part of the defendant showed that there was in fact no agency, it ought to have been an end of the case.

*INTOXICATING liquors: illegal sales: agency: evidence.*

Other questions discussed by counsel need not be considered. REVERSED.