ARIZONA COMMERCIAL MINING COMPANY, In Equity,

*vs.*

IRON CAP COPPER COMPANY,

(Two Cases)

Cumberland.    Opinion June 7, 1920.

*Jurisdiction of court in Maine.   No suit can be maintained in one State to directly determine the title to real property in another State.   No action of trespass or action for injury to real property in another State can be maintained in this State.   Actions where the gravamen of the action is trespass quare claus-um are also local.   Actions of trover and actions for money had and received are transitory and judgment is conclusive as to amount of debt due from one Maine corporation to another.   Disseizin.   "Full faith and credit."*

*Penalty imposed by the law of a State will not be enforced in another.   Statutory remedy will not be given extraterritorial effect unless act contemplates it.*

Two cases between the same parties and having same title.

The plaintiff and defendant both Maine corporations operate mines on contiguous claims in Arizona.

#### *Ore Case.*

The plaintiff claims that the defendant has entered upon the vein or lode owned by the plaintiff and severed, taken and sold some two hundred and fifty thousand tons of ore. The only question now before this court is that of jurisdiction. The defendant by its demurrer and plea says that the cases are cognizable exclusively by the courts of Arizona, and that the courts of Maine have no jurisdiction.

In this case it is held that—no suit can be maintained in one State to directly determine the title to real property in another State. No action of trespass or other action for injury to real property in another State can be maintained here.

Actions are also local where the gravamen of the action is trespass quare clausum, notwithstanding that there may be also an allegation of conversion. But the pending suit does not directly involve title to real estate.

It disclaims damages for injury to land. Its gravamen is money had and received by the defendant for chattels converted and sold by it. This suit is brought on the equity side of the court under R. S., Chap. 82, Sec. 6, Paragraph XI. It is

however in effect an action for money had and received. So far as jurisdiction is concerned it presents the same problem that would be presented by an action of trover. Actions of trover (or actions legal or equitable to recover where converted chattels have been sold) are transitory, even when to prove title to converted chattels it is necessary incidentally to prove title to real estate in another jurisdiction.

Our judgment will be conclusive as to the existence and amount of a debt due from one Maine corporation to another. Any incidental finding as to title of real estate in Arizona is not such a judgment as under the constitution is entitled to "full faith and credit."

*Held also:*

In reference to another contention of the defendant that while the disseizin of the plaintiff would defeat the action, it does not appear that the plaintiff had been disseized at or before the alleged conversion.

### *Water Case.*

This action is brought under the provisions of an Arizona statute to recover for expense incurred in draining the defendants mine, the drainage of which was in common with that of the plaintiff.

*Held:*

That while a penalty imposed by the law of a State will not be enforced in another, a statutory remedy is not necessarily confined in its operation to the courts of the State creating it.

But a remedy provided by statute will not be given extra territorial effect unless such effect is within the contemplation of the act.

The remedy given by the statute invoked in the pending case is obviously a remedy designed to be enforced by courts of competent jurisdiction with the State of Arizona.

On report. This case embraces two distinct equity proceedings wherein the Arizona Commercial Mining Company is complainant in each bill, and the Iron Cap Copper Company is respondent in each bill. Both plaintiff and defendant corporations were organized under the laws of Maine, and each conducts mining operations in the State of Arizona, and the business of each, aside from its actual mining operations, is carried on in the City of Boston, Massachusetts.

In one of the two bills, referred to as the "ore suit" the plaintiff seeks to recover for ores mined and extracted by the defendant from "veins, lodes or ledges" in the State of Arizona to which plaintiff claims title, and to enjoin the defendant from further extracting ores from said property. In the second bill, referred to as the "water

suit," the plaintiff seeks to charge the defendant with liability under a statute of the State of Arizona, for part of the expense incurred by the plaintiff in pumping and draining water which it claimed flowed into the plaintiff's mine from the mine of the defendant. To each bill defendant filed a plea in abatement, and a demurrer. A hearing was had upon the bill, plea in abatement, and demurrer, in each case at the same time, and, the Justice presiding being of the opinion that questions of law involved were of sufficient importance to justify the same, by agreement of the parties, the cause was reported to the Law Court with the following stipulation in each case:—If the demurrer is sustained, or if the plea is adjudged sufficient, the bill is to be dismissed; otherwise the respondent to have twenty days after rescript in which to answer over to the merits.

ORE CASE: Bill sustained. Demurrer and plea overruled. Defendant to have twenty days after rescript filed to answer.

WATER CASE:—Plea adjudged sufficient. Bill dismissed.

Cases stated in the opinion.

*Cook, Hutchinson & Pierce, and Dunbar, Nutter & McClennen,* for complainant.

*Woodman & Whitehouse, and Tyler, Tucker, Eames & Wright,* for respondent.

SITTING: SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

DEASY, J. To differentiate the above entitled suits, the parties being the same in each, we refer to the first as the "Ore Case" and the other as the "Water Case." The parties are Maine corporations operating mines on contiguous claims in Arizona.

Equity jurisdiction is invoked under R. S., Chap. 82, Sec. 6, Paragraph XI. Also section 8.

Substantially identical suits were first brought in Massachusetts, there reported to the full bench and after hearing ordered dismissed. *Arizona Mining Co.* v. *Iron Cap Copper Co.,* 233 Mass., 522; 124 N. E., 281.

It is contended by the defendant that the Massachusetts judgments are conclusive, and that the questions now presented to this court are res judicata. We are of opinion that this contention is not

sound. The Massachusetts court indeed discusses the "difficulties which can be avoided without apparent hardship to the plaintiff if it brings these suits in the courts of Arizona," but its reason for declining jurisdiction is thus stated: "The parties plaintiff and defendant are both non-residents. The courts of equity in this state are not open to them as matter of right but only as matter of comity." If the parties had been Massachusetts corporations the court of that Commonwealth might have looked further into the merits before refusing to take jurisdiction.

The cases are reported on bills, pleas and demurrers. No evidence is presented. In each case it is stipulated that if the demurrer is sustained, or the plea adjudged sufficient the bill is to be dismissed. Otherwise the time for filing answer is to be extended. For present purposes we must accept the allegations of the pleas as true and those of the bills as true except as contradicted by the pleas.

### ORE CASE

The plaintiff alleges that the defendant has taken, converted and sold some 250,000 tons of its (the plaintiff's) ore and brings suit for the money had and received by the defendant for the same.

The bill in equity after specifying certain mining properties owned by the plaintiff and certain other and adjacent properties and workings in possession of the defendant, including the "Iron Cap" and "Williams" shafts, says:

"Continuously during the six years last past, the respondent has taken by way of said Iron Cap shaft and said Williams shaft and other nearby shafts on the property occupied by the respondent, and underground workings connected with each shaft, and converted to its own use certain ores and has sold and has had and received to the complainant's use money for all said ores, and all of which were at all times the property of the complainant and originally came from those portions of the veins, lodes and ledges aforesaid, which had their top or apex upon the mining claim aforesaid, owned by the complainant, and wholly within the complainant's surface lines aforesaid and not elsewhere, and said portions of said veins, lodes or ledges aforesaid from which such ores came were at the time in the actual possession of the complainant."

The defendant by its plea replies:

"That this defendant has not at any time during the period complained of in the plaintiff's bill taken or removed any ore as to which the plaintiff claims to have had title or ownership, except ores extracted from real estate wholly without this State, to wit, veins, lodes and ledges in the State of Arizona as to which the defendant in good faith has at all times openly and to the knowledge of the plaintiff claimed and now claims title and ownership under the laws applicable thereto . . . . and that the plaintiff has had no access to the workings to those portions of the veins, lodes and ledges underneath the surface of the defendant's lands and claims as aforesaid, from which the defendant has extracted, taken and removed ores, but said workings and all access and means of access thereto have been in fact in the exclusive occupation, possession and control of the defendant, and during all of the period complained of in the plaintiff's bill, and prior thereto, the defendant has openly and with the knowledge of the plaintiff continuously worked upon and extracted ores from such veins, lodes and ledges, under claim of title thereto made in good faith."

In Maine the proprietor of lands owns all of the soil, rock, ore and other natural products lying directly beneath the surface. His boundaries are planes produced by projecting his boundary lines vertically downward and upward. But a different rule prevails in the case of mining claims derived from the public domain. The boundaries of such claims are governed by the so-called "Apex Law," which gives to the locator:

"The exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface-lines extended downward vertically, although such veins, lodes or ledges may so far depart from the perpendicular in their course downward as to extend outside the vertical side lines of such surface locations." U. S. R. S., Sec. 2322, U. S. Compiled Statutes, Sec. 4618.

The defendant contends that for four reasons the bill should be dismissed—

(1) That mortgagee should have been made a party.

It is alleged in the bill that "the only property which the respondent has in the State of Arizona is covered by a mortgage" for its full value. One of the grounds of demurrer is the non-joinder of the mortgagee.

If it appeared that an existing mortgage covered the lode from which the ore in question was severed the point might be well taken. But the bill which discloses that the defendant's property is mortgaged also declares that the lode is not the property of the defendant.

The plea does not refer to the mortgage. As a whole the bill must be taken as true, not so its every individual allegation forcibly separated from the context.

It does not appear from the bill that the ore involved in this suit is subject to mortgage.

(2) That defendant had disseized the plaintiff.

The defendant contends that the plea is sufficient and that therefore according to the stipulation the bill must be dismissed because it appears that the defendant at the time it took the ore was a disseizor. Quoting from the defendant's brief, "Even the owner of land who has been disseized cannot maintain trespass . . . . nor assumpsit for money had and received."

Many authorities support the contention that this action would be defeated if it appeared that, at the time of the alleged conversion, the defendant had disseized the plaintiff. *Abbott* v. *Abbott*, 51 Maine, 575; *Mansur* v. *Blake*, 62 Maine, 38; *Allen* v. *Thayer*, 17 Mass., 302; *Bigelow* v. *Jones*, 10 Pick., 164; *Downs* v. *Finnegan*, 58 Minn., 112, 50 N. W., 981; *Parks* v. *Morris*, 63 W. Va., 51, 59 S. E., 753.

The plea in the instant case does not expressly or by implication allege the plaintiff's disseizin. The bill alleges actual possession and right of possession in the plaintiff. The plea carefully avoids contradicting the plaintiff's claim of possession. It indeed alleges exclusive possession of the workings and means of access to the vein, lode or ledge from which the ore was taken, and it alleges that the defendant extracted the ore openly with the plaintiff's knowledge and under a bona fide claim of title. But this falls short of claiming disseizin.

An indispensable feature of disseizin is ouster. Disseizin is accomplished by excluding, evicting, ousting the owner from possession. Disseizin is that kind of possession which, continued for twenty years, ripens into title. *Worcester* v. *Lord*, 56 Maine, 268; *Roberts* v. *Niles*, 95 Maine, 245; *Hume* v. *Packing Co.*, (Or.), 92 Pac., 1071; *Towle* v. *Ayer*, 8 N. H., 59; *Unger* v. *Mooney*, 63 Cal., 590; 3 Blackst. Com. 169; 14 Cyc., 519.

The defendant does not allege ouster. An allegation of exclusive possession might be equivalent to ouster, but there is no allegation of exclusive possession by the defendant of the vein, lode or ledge.

A man may have exclusive possession of the only road leading to an orchard, and may have taken apples openly and under a claim of title—but unless he ousts the owner from possession of the orchard, he is not a disseizor. If by reason of the plaintiff's disseizin the present action cannot be maintained here, neither trover nor trespass quare clausam can be maintained here or anywhere. If the defendant's contention prevails the only remedy of the plaintiff is an action of ejectment to recover possession of property of which, according to the pleadings, it now has possession.

(3)   That title to Arizona real estate is involved.

(a)   No suit can be maintained in one State to directly determine the title to real property in another State. Citation of authorities is unnecessary to support this elementary proposition.

(b)   No action of trespass or other action for injury to real property in another State can be maintained here. In a few jurisdictions the contrary is held. *Little* v. *Railway Co.*, (Minn.), 33 L. R. A., 423. But the great weight of authority is to the effect that a suit to recover damages for injury to land is local. *Northern Co.* v. *Mich. Co.*, 15 How., 233; *Allin* v. *Lumber Co.*, 150 Mass., 560; *Niles* v. *Howe*, 57 Vt., 388; *A. T. Co.* v. *Middleton*, 80 N. Y., 410; *Dodge* v. *Colby*, (N. Y.), 15 N. E., 703; *Hill* v. *Nelson*, (N. J.), 57 At., 411; *M'Gonigle* v. *Atchinson*, (Kan.), 7 Pac., 552; *Peyton* v. *Desmond*, 129 Fed., 4.

(c)   Actions are also local wherein the gravamen of the action is trespass quare clausam, notwithstanding there may be also an allegation of conversion. *A. T. Co.* v. *Middleton*, 80 N. Y., 408; *Ellenwood* v. *Marietta Chair Co.*, 158 U. S., 105; 39 L. Ed., 913; *Ophir Mining Co.* v. *Sup. Ct.*, 147 Cal., 467, 82 Pac., 70; *Lindsley* v. *Union Mining Co.*, 26 Wash., 301, 66 Pac., 382.

But the pending suit does not directly involve title to real estate. It disclaims damages for injury to land. Its gravamen is the recovery of money had and received by defendant for chattels converted and sold. So far as jurisdiction is concerned it presents the same problem that would be presented by an action of trover. It differs widely from the cases cited in paragraphs (b) and (c). Two especially of the cases above cited are, with confidence relied on by the defendant, but even those cases are only seemingly in point—*Ophir Mining Co.*

v. *Superior Court,* supra.    This was a petition for a writ of prohibition to restrain the Superior Court from proceeding further in a suit alleged to involve title to a mining property in Nevada.    In determining the action to be local and therefore wrongly brought in California, the court says:

"So long as the complaint contains allegations of threatened future injuries to the realty and prays an injunction against future trespasses, the case is on a par with those cases in which a part of the damages claimed was for injury to the freehold."    (82 Pac., 74).

In the pending case there is no "threatened future injury to realty" and no "injunction against future trespasses" is prayed for.

*Lindsley* v. *Union Mining Co.,* supra.    The syllabus is as follows: "The fact that the necessary parties are before a court of equity does not give it jurisdiction in proceedings to enjoin trespass and waste in a mine located in a foreign jurisdiction, where there is no further ground for equitable interference."

The court in declining to take jurisdiction says:    "The complaint involves in its essence the possession of the mining lode.    The possession is in itself the foundation of the controversy."    In the instant case the possession of a mining lode is by no means the foundation of the controversy.

The cases cited in brief and referred to above in this section of the opinion were held local, but for reasons which do not apply in the pending case.

The following authorities are more nearly applicable:

*Stone* v. *United States,* 167 U. S., 178, 42 L. Ed., 127.

In this case the United States brought its action against Stone in the District Court for the District of Washington to recover the value of timber cut by him in Idaho.    The title to the timber was disputed and depended upon title to land in Idaho.    "The defendant introduced evidence to show that certain individuals had acquired the lands under the laws of the United States and were in the exercise of their rights when cutting timber from them."    (page 132).    The action was held transitory.    "The gravamen of the action," says the court, "was the conversion of the timber  .  .  .  .  and a judgment was asked not for the trespass, but for the value of the personal property so converted by the defendant."    This case is almost precisely parallel with the case at bar.

In deciding the Stone case the Federal Supreme Court cites *Schulenberg* v. *Harriman*, 21 Wall., 44, wherein the court says (page 64):

"Whilst the timber was standing it constituted a part of the realty; being severed from the soil its character was changed; it became personalty, but its title was not affected; it continued as previously the property of the owner of the land, and could be pursued wherever it was carried. All the remedies were open to the owner which the law affords in other cases of the wrongful removal or conversion of personal property."

*Ophir Mining Co.* v. *Superior Court*, 82 Pac., 70.

This action was held local and improperly brought in California. A writ of prohibition was issued by the Supreme Court of California staying further proceedings by the Superior Court in a suit involving a Nevada mine. But the relief asked for in the suit thus stayed was an injunction against future trespasses upon the realty. It was this ground upon which the court based its decision. The decision is therefore not in point, but in its opinion the court says:

"As land can be injured only where it is situated, damages for such injuries can only be recovered where it is situated; but since timber or ores, when severed from the land by the act of a trespasser, remain the personal property of the owner, and are capable of being converted by any person anywhere, an action to recover only the value of the ore or timber after severance is transitory, and may be maintained wherever the trespasser can be served with summons."

The following authorities also lend support to the contention that the pending action is transitory. These are not precisely in point because it does not appear that in them the question of title was distinctly raised: *Whidden* v. *Seelye*, 40 Maine, 247; *Hodges* v. *Hunter*, (Fla.) 54 So., 811; *M'Gonigle* v. *Atchinson*, (Kan.), 7 Pac., 550; *Peyton* v. *Desmond*, 129 Fed., 1; *Greeley* v. *Stilson*, 27 Mich., 154; *West* v. *McClure*, (Miss.), 37 So., 752.

A review of the above authorities leads to the conclusion that actions of trover (or for money had and received where converted chattels have been sold) are transitory even when to prove title to converted chattels it is necessary incidentally to prove title to real estate in another jurisdiction.

This court perceives no reason why it should not follow what seems to be the trend of the only authorities that have passed on the question that we are considering.

It may involve a finding, not indeed as to who owns a mining lode in Arizona, but as to who did own such lode when ore, the proceeds of which are subject to our jurisdiction, was severed from it. Our judgment will be conclusive as to the existence and amount of a debt alleged to be due from one Maine corporation to another. Any incidental finding as to title of real estate in Arizona is not of course such a judgment as under the constitution is entitled to full faith and credit.

It is true, as pointed out by the Massachusetts court, that great difficulties must be encountered in litigation so far from the base of supplies of evidence and experience. *Arizona Mining Co.* v. *Iron Cap Copper Co.*, 233 Mass., 522.

We are of opinion, however, that great difficulties will not justify this court in declining to take jurisdiction of a controversy between Maine citizens or corporations involving only the disputed ownership of personal property.

(4)  That the plaintiff's remedy is barred by laches.

We do not find that the defense of laches set up by the defendant is well founded.

## WATER CASE

This action is brought under an Arizona statute. The plaintiff alleges that it has for six years drained the defendant's mine and that under the statute the defendant is indebted to it for such service in the sum of one hundred and fifty thousand dollars.

The Arizona statute provides in substance that where adjacent mines have a common ingress of water or a common drainage it shall be the duty of the occupants of said mines to provide for their proportionate share of such drainage; and that in case of failure or neglect by either so that the occupants of the adjacent mine are compelled to pay more then their share of the cost of drainage, "the occupants of the mine so in default shall pay respectively to those performing the work of drainage their proportion of the actual and necessary cost and expense of pumping, draining or otherwise providing for said water, and if they fail or refuse to make such payment the same may be recovered by an action in any court of competent jurisdiction."

Another section provides that upon application of the plaintiff the court shall grant an order for the underground inspection and examination of the mine designating the number of persons who may examine and inspect such mine. The statute further says that "the Court shall have power to cause the removal of any rock, debris or any other obstacle in any lode or vein where such removal is shown to be necessary to a just determination of the question involved."

While a penalty imposed by the law of a State will not be enforced in another, a statutory remedy is not necessarily confined in its application to the courts of the state creating it. But a remedy provided by statute will not be given extra territorial effect unless such effect is within the contemplation of the act.

"It is familiar law that statutes do not extend ex proprio vigore beyond the boundaries of the State in which they are enacted. If they are merely penal, they cannot be enforced in another State. If the right by the terms of the statute creating it is to be enforced by prescribed proceedings within the State, the right is limited by the statute, and can only be enforced in accordance with the statute. If it is of such a kind that, with a due regard for the interests of the parties, a proper remedy can be given only in the jurisdiction where it is created, it will not be enforced elsewhere." *Howarth* v. *Lombard*, 175 Mass., 572.

Referring to a Colorado statute this court has said, "It simply establishes a purely local method of procedure and practise. It does not purport to have and obviously was not designed to have any force beyond the jurisdiction of the State in which it was created." *Miller* v. *Spaulding*, 107 Maine, 271.

The remedy given by the statute invoked in the pending case is obviously a remedy designed to be enforced by courts of competent jurisdiction within the State of Arizona.

The intent that the act shall have no extraterritorial effect is made manifest by the grant of powers deemed necessary for its adequate enforcement, and which can be exercised only by the courts of Arizona.

ORE CASE:   *Bill sustained.*
            *Demurrer and plea overruled.*
            *Defendant to have 20 days after*
            *rescript filed to answer.*

WATER CASE:   *Plea adjudged sufficient.*
              *Bill dismissed.*