[Civil No. 2162.  Filed January 3, 1925.]

[232 Pac. 545.]

# ARIZONA COMMERCIAL MINING COMPANY, Appellant, v. IRON CAP COPPER COMPANY, Appellee.

1. MINES AND MINERALS—SUIT IN FOREIGN STATE FOR VALUE OF ORE MINED FROM VEINS UNDER SURFACE OF DEFENDANT'S CLAIMS HELD TO CREATE CLOUD ON DEFENDANT'S TITLE.—Action in foreign state to recover value of ore mined by defendant from veins beneath surface of its claims, but having apices in plaintiff's ground, amounted to assertion of right and interest in realty claimed by defendant, and created cloud on its title warranting resort to form of action to try title, authorized by Civil Code of 1913, paragraph 1623.

2. MINES AND MINERALS — LOCATOR CANNOT HAVE BOUNDARY LINES CROSSING LEDGE TREATED AS SIDE-LINES WHICH MAY BE PASSED IN PURSUIT OF VEINS DOWNWARD BETWEEN END-LINES.—Under Revised Statutes of the United States, sections 2320, 2322 (U. S. Comp. Stats., §§ 4615, 4618), locator of mining claim cannot have boundary lines crossing ledge treated as side-lines, which may be passed in pursuit of vein downward between parallel end-lines, though form of boundary line indicates such intent and discovery vein crosses only one boundary.

3. MINES AND MINERALS—LOCATOR HELD ENTITLED TO FOLLOW VEIN INTERSECTING END-LINE OF ANOTHER CLAIM THROUGHOUT ENTIRE COURSE DOWNWARD ON LENGTH OF APEX WITHIN LOCATOR'S CLAIM.—Locator of mining claim *held* entitled, under Revised Statutes of the United States, section 2322 (U. S. Comp. Stats., § 4618), to follow vein, intersecting end-line of another claim, throughout its entire course downward on length of apex within locator's claim with extralateral limitations fixed by statute, though vein at point far below surface entered ground of other claim on strike rather than dip.

4. MINES AND MINERALS—JUDGMENT ENJOINING MINING UNDER SURFACE OF ANOTHER CLAIM, ON FINDING OF INABILITY TO DETERMINE

---

2. Rights in cross-lodes vesting in patentee, see note in 83 **Am. St. Rep.** 41.  See, also, 18 **R. C. L.** 1166.

3. Extralateral rights in mining, see note in 58 **Am. St. Rep.** 263. Right to follow vein on dip beyond surface lines, see note in 53 **L. R. A.** 491.  See, also, 11 **R. C. L.** 1165.

Continuity of Vein for Lack of Development, Forfeits Rights Guaranteed by Federal Statute.—Judgment enjoining mining beneath surface of another claim, under claim of extralateral rights in vein, which court found was so undeveloped that it was impossible to say that it had continuity claimed by defendant, deprives latter of right to follow vein, though subsequent development showed its right to do so, and hence operates as forfeiture of rights vested by patent, and guaranteed by Revised Statutes of the United States, section 2322 (U. S. Comp. Stats., § 4618).

5. Mines and Minerals — Divestiture of Vested Rights as Contingent Result of Judgment not Presumed Inevitable Result of Statutory Form of Action to Quiet Title.—Purpose of Civil Code of 1913, paragraph 1623, being to quiet title in rightful owner, not to divest him of vested rights, even as contingent result of judgment, it will not be presumed that such consequence is inevitable result of form of action therein authorized, when applied to adjustment of disputes over mining rights.

6. Mines and Minerals—Plaintiff Held not Entitled to Judgment Quieting Title to Any Ores Within Claims Found so Undeveloped as to Make It Impossible to Tell Whether Ore was Mined from Veins Having Apices Therein.—While remedy by form of action, authorized by Civil Code of 1913, paragraph 1623, to quiet title, may be applied to all disputes over realty, including mining rights, by courts of common law and equity jurisdiction, plaintiff, alleging that actions by defendant to recover ores alleged to have been mined by plaintiff in veins, having apices in defendant's ground, constituted sole cloud on plaintiff's title, was not entitled to judgment quieting title, not only to ores already removed, but to any within its claims, on finding that, because of meager development, it was impossible to tell whether continuity of veins was such as to show whether ore was mined therefrom; paragraph 548 requiring that judgment conform to pleading, and Revised Statutes of the United States, section 2322 (U. S. Comp. Stats., § 4618), providing only for adjusting rights in being, which may be subject of intelligent inquiry.

See (1) 27 **Cyc.**, p. 652.    (2, 3) 27 **Cyc.**, p. 587.    (4) 27 **Cyc.**, p. 666.    (5, 6) 27 **Cyc.**, p. 658 (1926 Anno.).

APPEAL from a judgment of the Superior Court of the County of Gila. Samuel L. Pattee, Judge. Judgment reversed.

Messrs. Ellinwood & Ross, Messrs. Dunbar, Nutter & McClennen and Mr. Edward F. McClennen, for Appellant.

Mr. John P. Gray, Messrs. Morris & Malott and Mr. Burton E. Eames, for Appellee.

LYMAN, J.—This action to quiet title in the Iron Cap Copper Company of certain mining claims in Gila county, this state, grows out of a controversy over ore mined by it from beneath the surface of these claims, but which the Arizona Commercial Mining Company, the defendant in the action and the appellant here, had claimed because taken from veins having their apices in its ground, and had attempted to recover its value from the Iron Cap Copper Company in the courts of Massachusetts, where both parties had executive offices. Jurisdiction of the matter was there declined for reasons stated in *Arizona Commercial Min. Co.* v. *Iron Cap Copper Co.*, 233 Mass. 522, 124 N. E. 281, and *Arizona Commercial Min. Co.* v. *Iron Cap Copper Co.*, 236 Mass. 185, 128 N. E. 4. Later similar proceedings were commenced in the courts of Maine, where both corporations were domiciled, and jurisdiction there was entertained. *Arizona Commercial Min. Co.* v. *Iron Cap Copper Co.*, 119 Me. 213, 110 Atl. 429. That suit is still pending subject to the judgment in this action.

The complaint in this action sets forth somewhat in detail the pleadings and judgments in the Massachusetts and Maine cases, and summarizes as follows:

"Plaintiff avers that the controversy in the state of Maine presents the issue as to the ownership of the ores (in) which the plaintiff has mined from within its mining property."

The demurrer to this complaint upon the ground that it fails to state a cause of action, in that it did not appear that the Iron Cap Company's title had been assailed, or that the proceedings in New England had the effect to cloud its title, was overruled, and the same question is brought up on this appeal.

While the gravamen of the cause of action, in each of these New England proceedings, was the recovery of the value of ore alleged to have been taken, the ownership of the ore depended ultimately upon the title to the ground from which it came, and no recovery could have been had by the plaintiff in those actions without establishing in it title to the very ground which the Iron Cap Company claims, and to which in this action it is seeking to have its title quieted.

This form of action for trying title to real estate, authorized by paragraph 1623, Revised Statutes of Arizona of 1913 (Civ. Code), is exceedingly liberal in its application. Undoubtedly the pendency of the action in Maine amounted to an assertion seriously and effectively of some right and interest in the real estate claimed by the Iron Cap Company, and had the effect of creating a cloud upon its title. *Curtis* v. *Sutter*, 15 Cal. 259; *Ely* v. *New Mexico R. R. Co.*, 129 U. S. 291, 32 L. Ed. 688, 9 Sup. Ct. Rep. 293 (see, also, Rose's U. S. Notes); *Castro* v. *Barry*, 79 Cal. 443, 21 Pac. 946.

The answer again presented the same question of jurisdiction by plea. It also states in detail the location and title of its mining claims, and the presence therein of veins of ore designated as Old Dominion and Black Hawk, but alleges that, "in the present condition of development of the plaintiff's mining claims, and of the defendant's mining claims, it is not possible to set forth to what extent, if any, the

defendant is entitled to veins, lodes, and ledges beneath the plaintiff's claims,'' and asserts that inasmuch as the defendant has made no claim to plaintiff's real estate, it should not be required to disclaim or to claim with reference to such veins and ledges, but that it claims possession and enjoyment of the Old Dominion and Black Hawk veins so far as it may appear by subsequent development that the position of these veins within its mining claims shall entitle it to them in accordance with the provisions of section 2322, Revised Statutes of the United States (6 Fed. Stats. Ann., p. 523; U. S. Comp. Stats., § 4618).

During the trial of the case upon the merits, examination was made at considerable length into the geology and mineral development of the disputed territory, and the evidence enlightened as far as possible by opinions of experts, the court sitting without a jury. Preliminary to the decree rendered, the court stated that "with one or two exceptions there is no dispute as to the physical facts." "The lack of development is such that it is impossible to say, and it cannot be found by the court, that either the Old Dominion or the Black Hawk vein occupies any such position or has any such continuity as claimed by the defendant." The decree, however, provided that the veins of ore found in Iron Cap ground did not have their apices in the mining properties of the Arizona Commercial, and that the ores extracted and removed heretofore are not a part of any vein or lodes having their tops or apices within the Arizona Commercial Company's properties. The judgment further decreed that the right, title, and interest of the Iron Cap Company in the designated mining claims, and in the Old Dominion and Black Hawk veins, be quieted as against any assertion of

extralateral rights by the Arizona Commercial Company, based upon the ownership of said veins or either of them, and perpetually enjoins the assertion of any rights in or to these veins as against the Iron Cap Company.

To this judgment the Arizona Commercial makes two general objections. First, upon the facts disclosed by the evidence and found by the court, the Arizona Commercial is entitled to some portion of the ore in dispute by reason of a right to pursue the vein in which it was found through the eastern boundary plane of the Defiance claim. Second, that the judgment is in conflict with the facts found by the court, is broader than the issues, and in contravention of the vested rights of the Arizona Commercial under the statutes of the United States. An examination of these grounds of appeal requires an understanding of the position and conditions of the mining claims out of which this dispute grows.

The mining claims in question owned by the Iron Cap Company are the Iron Cap, Columbus, Olympia and Free America. These claims, together with the Friends and Columbia, also owned by the Iron Cap Company, lie in a compact body, and are flanked upon the west by the mining claims Cochise, Defiance and Copper Hill, and upon the east by the Matamora, Pontiac, Covellite, Eureka, Black Hawk, Climax and Omega, which surround the Free America on three sides, and are all owned by the Arizona Commercial. Outline and relative position of all these claims is shown on Exhibit 1A annexed. The claims owned by the Arizona Commercial are the older by location and patent. There is no dispute concerning surface rights or boundary lines.

Along the lines shown on Exhibit 1A, and there designated as "Apex Old Dominion vein" and "Apex Black Hawk vein" respectively, at intervals are found outcroppings of ore with considerable development at a few points. It is the theory of the Arizona Commercial that a vein, which it designates as the Old Dominion, has a continuous surface apex along the line indicated, and dips southerly in uninterrupted course until it is faulted, cut in two, and the severed parts displaced by the Black Hawk vein, which is a mineralized fissure dipping flatly to the north, and extending in a course somewhat nearly parallel to the Old Dominion vein through the Copper Hill, Iron Cap, Columbia, Omega and Black Hawk mining claims. Both of these veins are cut in two by the Budget fault, causing a displacement and wide separation of the severed parts both vertically and longitudinally. The position of this fault is in part only shown on the diagram. It does, however, extend across the Defiance claim from north to south. The ore which is the source of this controversy was mined beneath the Black Hawk vein from an ore body found in a well-defined vein formation which extends through a portion of the Iron Cap, Columbus, and Free America. The Iron Cap Company rests its claim to this ore solely upon the common-law presumption that the owner of the surface is entitled to everything found beneath. This vein formation is continuous from the Iron Cap ground into the Defiance claim as far west as the Budget fault, and dips to the south. It has no surface outcroppings, but terminates in its upward course at the Black Hawk vein. That is its apex. The exact position of this line of contact within the Defiance claim, as disclosed by the record, is disputed by counsel in their argument here. The effect of the court's finding of facts is that it crosses the north boundary line of the Defiance. The testi-

27 Ariz.—14

mony of plaintiff's witness is that it probably crosses that line 140 feet west of the northeast corner of the Defiance claim. From that point it extends south-westerly through Defiance ground a distance of 350 feet to the Budget fault, where its continuity is inter-rupted by that fault. The location of this vein within the Defiance is at such an angle with the boundary lines that it would, if continued in the same direction, cross the south boundary. The Arizona Commercial claims that, from this apex within its ground, it is entitled to follow the vein through the easterly boundary of the Defiance, and into the Iron Cap claim.

The Defiance claim as patented has its side-lines upon the north and south. The ledge in which the discovery shaft is located, with reference to which the claim was laid out, crosses the southern boundary line, and extends thence in a northeasterly direction into the claim a distance of about 550 feet without crossing any other boundary, but apparently coming to a definite termination within the claim, as indi-cated on Exhibit 1A. This vein is distinguished from the Old Dominion vein, or any vein which can be traced into Iron Cap ground. With the discovery vein in this position, and a secondary vein crossing the north boundary plane and extending into De-fiance ground as far as the Budget fault, are found the factors of the problem upon which the rights of the parties depend.

The interests, respectively, of the parties hereto in these mining claims grow out of the statute, in ac-cordance with which these claims were acquired from the government. Sections 2320 and 2322, Revised Statutes of the United States (6 Fed. Stats. Ann., pp. 512, 523; U. S. Comp. Stats., §§ 4615, 4618), are applicable to the questions here in controversy, and are as follows:

Rev. Stats. U. S., § 2320: "Mining claims upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, heretofore located, shall be governed as to length along the vein or lode by the customs, regulations, and laws in force at the date of their location. A mining claim located after the tenth day of May, eighteen hundred and seventy-two, whether located by one or more persons, may equal, but shall not exceed, one thousand five hundred feet in length along the vein or lode; but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located. No claim shall extend more than three hundred feet on each side of the middle of the vein at the surface, nor shall any claim be limited by any mining regulation to less than twenty-five feet on each side of the middle of the vein at the surface, except where adverse rights existing on the tenth day of May, eighteen hundred and seventy-two, render such limitation necessary. The end lines of each claim shall be parallel to each other. . . . ''

Rev. Stats. U. S., § 2322: "The locators of all mining locations heretofore made or which shall hereafter be made, on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns, where no adverse claim exists on the tenth day of May, eighteen hundred and seventy-two, so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end

lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges. And nothing in this section shall authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another.''

By this statute the discoverer may acquire a definite section of the mineral vein by claiming and marking it by boundary lines. The vein or lode is the thing of value, and the right to pursue it downward throughout its entire depth passes with the grant of the apex, subject to the conditions stated in the statute. The length of the section is indicated by the locator by end-lines, beyond which the claimant may not go upon or below the surface of the ground, but the side-line planes may be passed in pursuit of the vein downward between parallel end planes. The respective functions of the side and end lines are so different that one may not be made to perform the duty of the other, nor will a locator be permitted to have the lines which cross the ledge treated as side-lines, though the form of his boundary line indicates that to have been his intent, because he would by that means, if allowed, acquire the right to follow the ledge along the strike indefinitely, and enjoy advantages not given or contemplated by the statute. Furthermore, the statute explicitly directs that the end-lines shall cross the ledge. The rights of the locator are primarily statutory. At least none can be enforced in conflict with the terms of the statute. Where it appears from its form that a location, by mistake or otherwise, has not been laid out with reference to the ledge as the statute directs, but is laid across instead of along the ledge, the courts, while not undertaking or permitting a re-formation of the boundary lines, have given to the

locator such rights as he might be entitled to by treating the boundaries which cross the ledge as end-lines, since the lines which measure the length of the ledge are by the terms of the statute end-lines, regardless of the form of figure of which they are a part. *Mining Co.* v. *Tarbet,* 98 U. S. 463, 25 L. Ed. 253; *Argentine Min. Co.* v. *Terrible Min. Co.,* 122 U. S. 478, 30 L. Ed. 1140, 7 Sup. Ct. Rep. 1356; *King* v. *Amy & Silversmith Min. Co.,* 152 U. S. 222, 38 L. Ed. 419, 14 Sup. Ct. Rep. 510 (see, also, Rose's U. S. Notes).

In the Defiance claim the discovery vein crosses the south boundary and none other. If this boundary is treated as a side-line it must perform the functions of a side-line, and permit, other conditions being favorable, the pursuit of the vein in that direction, which would be along the strike, indefinitely in that direction, giving to the locator not merely the 1,500 feet of ledge allowed by the statute, but an indefinite extent not sanctioned by statute. The early case of *Mining Co.* v. *Tarbet,* 98 U. S. 463, 25 L. Ed. 253, states the principle thus:

"It was not the intent of the law to allow the person to make his location crosswise of a vein so that the side lines shall cross it, and thereby give him the right to follow the strike of the vein outside of his side lines. That would subvert the whole system sought to be established by the law."

The fact that the discovery vein crosses only one boundary does not affect the principle involved, or make it less applicable to the Defiance claim. The reasons for denying to the locator the pursuit of the vein upon its strike across both side-lines are equally applicable, and with the same force deny his right to pursue the vein across one side-line.

The south boundary is therefore an end-line. Consequently the east boundary is a side-line. Under these conditions what is the extent of the Arizona

Commercial's rights in that portion of the Old Dominion vein lying between the north end-line of the Defiance and the Budget fault?

This vein is entirely separate and distinct from the discovery vein, and the location of the claim was made without any reference thereto. It is what is sometimes called a secondary vein, but the principles which govern the locator's rights in the discovery vein apply as well to such a vein as this. The title which the locator holds from the government to his mining claim invests him with the possession and enjoyment—

"of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges." Section 2322, United States Statutes.

Here is an "apex which lies inside such surface lines." It intersects the north end-line and extends into the claim a distance of 350 feet, and until interrupted by the Budget fault. If, instead of such interruption, it had extended quite across and intersected the southern end-line, no question could possibly be raised that it is such a vein as under the statute may be pursued downward throughout its entire extent. It would then represent the typical instance of a vein crossing both end-lines. The courts, however, have uniformly held that the miner's misfortune, in locating a vein of less extent than the

law entitles him to, shall not suffer further loss by depriving him of the rights to the part which he has acquired. *Del Monte Mining & Milling Co.* v. *Last Chance Mining & Milling Co.*, 171 U. S. 55, 43 L. Ed. 72, 18 Sup. Ct. Rep. 895 (see, also, Rose's U. S. Notes).

We conclude, therefore, that the Arizona Commercial is entitled to follow this vein throughout its entire course downward upon such length of apex as is found within the Defiance claim, with such limitations extralaterally as the statute has fixed. These limitations are defined by the plane of the north boundary of the Defiance, drawn downward vertically and extending in its own direction indefinitely, and by another plane parallel thereto, commencing at the intersection of the Budget fault with this vein.

Much of the evidence in this case was introduced for the purpose of showing that the Old Dominion vein, at the point many hundred feet below the surface where the main body and principal values were found, entered the Iron Cap ground from the Defiance claim upon the strike rather than upon the dip. The argument of counsel was directed to the same point. In disposing of this phase of the controversy, the trial court expressed the opinion that it was "impressed with the argument of plaintiff's counsel that in this particular case the attempted pursuit is upon the strike rather than the dip or downward course of the Iron Cap vein (Old Dominion vein), and that no extralateral rights can be claimed for that reason." This comment seems to have in view the position of the vein at the point where it emerges from the Defiance claim and passes into the Iron Cap ground.

The statute furnishes no guide for determining the rights of the parties by examining the vein at that point. The rights of the locator are determined by the position of the apex. When the position of the

apex with reference to boundary planes is such as the statute contemplates and provides shall entitle the locator to pursue it to depth, he need not be concerned about the position of the vein where it emerges from the boundary planes of the locator and passes into other ground.

In *Stewart Min. Co.* v. *Ontario Min. Co.*, 237 U. S. 350, 59 L. Ed. 989, 35 Sup. Ct. Rep. 610, the opinion says:

"It is rudimentary that extralateral rights to a vein depend upon the position of its top or apex."

The course of mineral veins beneath the surface is apt to be devious and erratic, but the rights of the locator are established by the position of the apex, and are not lost nor changed by any twisting or meandering beneath the surface.

The conclusion reached by the trial court appears to follow the opinion of *Stewart Min. Co.* v. *Ontario Min. Co.*, 23 Idaho, 724, 132 Pac. 787. That decision was affirmed by the Supreme Court of the United States in the case above cited, but in an opinion largely devoted to explaining the error upon which the Idaho court based its decision, and into which the trial court in this case seems to have fallen.

The other objection made by appellant to this judgment is that it arbitrarily divests it of rights conveyed by patent and guaranteed by statute. The court found, among other things, that as to a portion at least of the mining claims of the Arizona Commercial the "lack of development is such that it is impossible to say, and it cannot be found by the court that either the Old Dominion or the Black Hawk vein occupies any such position or has any such continuity as claimed by the defendant and indicated on its map." Upon that finding of fact it was decreed:

"And the said defendant, its agents and employees, and all persons acting or pretending to act by, through

or under it, be perpetually enjoined and restrained from in any manner entering into or within said mining claims of the plaintiff, or from working or mining therein, or from removing from said mining ground of the plaintiff, or any part thereof, any rock or mineral substance whatever under or by virtue of any claim of extralateral rights based upon the ownership of said so-called Old Dominion vein or so-called Black Hawk vein, or either thereof or any part of either thereof. And said defendant, its agents, and employees, and all persons acting or pretending to act by, through, or under it, be perpetually enjoined and restrained from in any manner asserting any right, title, or interest of, in, or to any ores or minerals within or removed from said mining claims of the plaintiff by virtue of any claim of extralateral rights based upon the ownership of said so-called Old Dominion vein or so-called Black Hawk vein or either thereof, or any part of either thereof.''

The effect of this judgment manifestly is to deprive the Arizona Commercial of the right to follow these veins, or either of them, into Iron Cap ground, even though it should appear by subsequent development, that except for this judgment it would be entitled to do so. Under such circumstances the judgment would operate as a forfeiture of rights invested by patent and guaranteed by statute. Rev. Stats. U. S., § 2322. Such a consequence is not to be lightly considered.

The purpose of the statute which authorizes this form of action is to quiet title in the rightful owner, not to divest a rightful owner of vested rights even as a contingent result of the judgment. Rev. Stats. (Civ. Code) Ariz. 1913, par. 1623. Therefore it will not be presumed that such consequence is an inevitable result of this form of action when applied to the adjustment of disputes over mining rights.

This judgment apparently is predicated upon the hypothesis that the Arizona Commercial, having as-

serted some right in Iron Cap mining claims which it became bound under the statute to establish or relinquish, and having failed to establish it, in part at least, should be restrained from ever again asserting such right to the end, and that the affected title might be quieted in the Iron Cap Company. If the subject of dispute here were a general claim of title or interest in some forms of real estate, the failure to prove the controverted right might properly be visited with a judgment which would forever dispose of such claim. The problem in this case is not so simple as that, nor is the statute under which the remedy is sought so narrow that it can be applied only to controversies over titles to the more usual form of real estate. Courts have often adjusted disputes of this character by this form of action, though not perhaps under circumstances exactly parallel to those presented here. The comment of Judge FIELD upon this remedy is pertinent:

"There is no difficulty in so conducting a suit, under the statute, as to fully protect the legal rights of the parties, and at the same time to secure the beneficial result afforded by a court of equity in bills of peace—which is, repose from further litigation. Indeed, the remedy under the statute is eminently simple, direct, and efficacious for this purpose." *Curtis* v. *Sutter,* 15 Cal. 259; *Merced Min. Co.* v. *Fremont,* 7 Cal. 319, 68 Am. Dec. 262.

There seems to be no difficulty in applying this remedy to all disputes over real estate by a court invested with common law and equity jurisdiction under the rules and principles which govern rights of property, and that particular class of property with which this action is concerned. But whatever the possibilities of relief under the statute, the judgment must conform to the pleadings. Rev. Stats. Ariz. (Civ. Code) 1913, par. 548. The complaint in this case makes no general assertion that the Iron Cap title

has been assailed, or that defendant claims some right, title or interest adverse to it. But the plaintiff rests its cause of action upon the specific fact that the Arizona Commercial had, by action in court, made claim to certain ores mined and converted by the Iron Cap Company; that the action in the state of Maine, or that action together with other actions, but all to the same effect, constituted the sole cloud upon the Iron Cap title and the sole cause of this action. The character and scope of these actions are determined and defined in the opinion of the Supreme Court of Maine, in *Arizona Commercial Min. Co.* v. *Iron Cap Copper Co.*, 119 Me. 213, 110 Atl. 429, as follows:

"The pending suit does not directly involve title to real estate. It disclaims damages for injury to land. Its gravamen is the recovery of money had and received by defendant for chattels converted and sold."

In further defining the issue involved it says:

"It may involve a finding, not indeed as to who owns a mining lode in Arizona, but as to who did own such lode when ore, the proceeds of which are subject to our jurisdiction, was severed from it."

The same issues were involved in actions between the same parties, in 233 Mass. 522, 124 N. E. 281, and 236 Mass. 185, 128 N. E. 4.

It is the view of the Arizona Commercial that these New England proceedings did not amount to a claim of any right, title or interest in real estate. Having decided adversely to that view, the Iron Cap Company is not, however, entitled to a remedy any broader than the injury it complains of. There is no basis in its complaint for quieting its title as against any other adverse claim than that made in the New England actions. The demand alleged to have been made in such actions was for ores already mined, from veins having their apex in Arizona Com-

mercial ground. It is not found that no such veins have their apices in Arizona Commercial ground, or that their apices are found in Iron Cap ground; it is only found that their continuity and persistence is not such as to disclose that the ore in controversy had been mined from either of these veins, and this finding is based, not upon the conclusion that the evidence showed that it was not a fact, but only because of the meager and insufficient development it was impossible to tell whether or not it was a fact. The judgment, as appears from that portion of it above quoted, is broader than that, and assumes to quiet title, not only to the ores already "removed," but also to "any ores or minerals within said mining claims," even though it should appear by subsequent development that such ores have their apex within Arizona Commercial ground.

The thing of value in a mining claim is the vein of mineral matter and the right to follow it throughout its depth and beyond the planes of surface boundaries. Shorn of that right there may be little value left. When the apex is shown to exist in a mining claim, there is an inference that it dips beyond the side-lines of the claim. Both the fact and the value of such extralateral portions of the vein cannot be known without actually uncovering it, often at the cost of long and expensive operation of mining, which the owner is not required to hasten at his peril. These underground, undisclosed and unknowable properties are not the subject of testimony as to their position or value; they are not the subject of dispute because not susceptible of examination and inquiry. They cannot therefore be disposed of by judicial decree, since such a decree would be without hearing, or the possibility of hearing, and the owner might lose his property without his day in court. It may safely be assumed that this stat-

ute, providing a form of action to quiet title, provides only for adjusting property rights which are in being and that may be the subject of intelligent inquiry. This judgment, so far as it affects mineral lodes undisclosed by development, deprives the owner of his property without opportunity to be heard. This phase of the judgment is objectionable, not only because it makes an impossible disposition of property as between the litigants, but it assumes to nullify a statutory right. The statute provides a guide for determining the ownership of the vein when it is uncovered and its relation to the apex is ascertained. Rev. Stats. U. S., § 2322. The effect of this judgment is to repeal the operation of the statute as to the veins affected by it, so that, when they are developed and their relations to their apices are known, the statute shall not act upon them. They are divested of rights with which the statute has invested them.

Similar conclusions were reached by the courts in the cases of *Butte & Superior Co.* v. *Clark-Montana Co.,* 249 U. S. 12, 63 L. Ed. 447, 39 Sup. Ct. Rep. 231, and *Keely* v. *Ophir Hill Cons. Min. Co.,* 169 Fed. 601, 95 C. C. A. 99. Plaintiff is entitled to have its title quieted, subject to the exception, and with the limitation stated in this opinion.

The judgment is reversed and the case is remanded to the superior court, for the purpose of entering judgment in accord with this opinion, or for such other proceedings as may not be in conflict with it.

McALISTER, C. J., and ROSS, J., concur.