HENRY DOWNS *vs.* ANDREW J. FINNEGAN.

Argued May 11, 1894. Affirmed July 5, 1894.

No. 8757.

**A mere trespass, not the basis of an implied assumpsit.**

A mere naked trespass, although creating a liability for damages, cannot be the basis of an action as on implied assumpsit. Such an action is not to recover damages for the tort, but to recover the value of that which the wrongdoer has appropriated to his own use, the law implying a promise to pay its reasonable value.

**Implied assumpsit lies for trees or stone severed and converted.**

The right to waive a tort, and to recover as on implied assumpsit, has, according to the modern decisions, been extended to cases where there has been a wrongful conversion of property of one person to the use of another, whether sold or not by the latter, and also to cases where a trespasser has severed trees from land in possession of the owner, or has

quarried stone thereon, and has afterwards taken the trees or stone away, converting the same to his own use, so that trover or replevin would lie.

**But not if the wrong doer held adverse possession of the land.**

If, however, the series of acts in which the severing of trees or the quarrying of the stone, the taking away from the freehold, and their conversion, has occurred, are sufficient to create adverse possession of the land in the person performing the acts, assumpsit for their value will not lie, for it is a settled principle that title to land cannot be tried *ex directo* in transitory actions.

**If assumpsit lies it may be counterclaimed.**

Where an injured party may elect between the two forms of action, his demand may be counterclaimed against a plaintiff's cause of action arising out of contract, or, where itself set up by a plaintiff as arising on the implied contract, it may be opposed by a counterclaim arising out of contract.

**Variance between pleading and proofs.**

In this case the answer averred that the property (stone) mentioned in the counterclaim had been quarried and removed under license from defendant, while the proof showed that plaintiff was simply a trespasser. *Held*, that there was a material variance between the pleadings and the proof.

Appeal by plaintiff, Henry Downs, from an order of the District Court of Hennepin County, *Charles M. Pond*, J., made November 29, 1893, setting aside a verdict in his favor for $2,982.

The defendant, Andrew J. Finnegan, employed plaintiff to build the foundation of stone masonry for a house on Clinton Avenue in Minneapolis and to furnish the materials, and agreed to pay him therefor $2.50 per perch for rubble stone, and $3.50 per perch for footing stone measured in the wall when completed. The work was completed February 4, 1889. Plaintiff received $200 and brought this action to recover the balance, $2,248.10 with interest from that date. Defendant answered that he owned government lot (2) in Section twenty five (25) T. 29, R. 24, in Hennepin County, and that between June 1, 1886, and January 1, 1893, plaintiff bought of defendant, quarried and removed from this land 44,218 perch of stone worth thirty cents per perch, and that no part of the price had been paid and he demanded judgment against plaintiff for $13,265.40 less any sum found due plaintiff on the cause of action stated in the complaint. The plaintiff replied, denying all the allegations of this answer. At the trial October 2, 1893, plaintiff proved his demand

and rested.   Defendant then proved his patent title to lot two (2) mentioned in his answer and that plaintiff had quarried stone on it, and the amount and value of the stone taken.   Defendant was a witness on his own behalf and on cross examination testified that plaintiff also claimed to own lot two (2) and to have the right to quarry stone there, and had been taking out stone under such claim during the time stated in the answer.   The court on motion of plaintiff then dismissed the counterclaim.   Defendant excepted. The jury returned a verdict for the plaintiff and assessed his damages at $2,982.   The defendant made and settled a bill of exceptions and moved for a new trial.   The court granted it saying, the counterclaim is badly pleaded.   The defendant's answer sets out a sale and delivery of stone when he knew his cause of action, if he had any, to be in tort.   He should have alleged the facts as the statute provides.   But plaintiff became aware of the defect in the pleading and the variance in proof, and made no objection on those grounds or on the ground that the answer did not show a proper counterclaim until defendant rested his case.   Under the testimony the jury might have found that plaintiff had sold and disposed of the stone which he took out of the quarry.   If so the case would be within *Brady* v. *Brennan*, 25 Minn. 210.   See also *Walker* v. *Johnson*, 28 Minn. 147; *Warner* v. *Foote*, 40 Minn. 176.

*Sumner Ladd*, for appellant.

The defendant pleaded his counterclaim as though it were an action arising on contract, and therefore plaintiff could not demur. It was equally impossible for plaintiff to make this objection on the trial until the close of defendant's evidence, since he could not foresee that defendant would not attempt to prove the contract of purchase which he had alleged.   We are unable to see how the trial court arrived at the conclusion that plaintiff was aware at the outset of defendant's evidence of the defective pleading and of the variance in proof.   Plaintiff never consented to litigate the merits of the counterclaim and introduced no evidence in rebuttal of defendant's testimony.   A cause of action sounding in tort even though for the conversion of ordinary personal property cannot, under the decisions of this court, be set up as a counterclaim to a cause of action arising on contract.   *Folsom* v. *Carli*, 6 Minn. 420; *Steinhart*

v. *Pitcher*, 20 Minn. 102; *Brady* v. *Brennan*, 25 Minn. 210; *Warner* v. *Foote*, 40 Minn. 176.

The defendant's evidence tends to show that he acquired paper title to the stone quarry in question through a quitclaim deed from William A. Cheever and wife, dated November 24, 1882. It also shows that the plaintiff had been in the adverse possession of this quarry from 1886 or 1887 down to the time of the trial under a claim of title; that this adverse possession was open, visible and notorious. That during all these years the plaintiff had been working it, taking out stone. It nowhere appears that the plaintiff ever made an unlawful entry into this land or that he unlawfully withholds the possession of it, and it nowhere appears that defendant had title to or right of possession of the land, either at the time of the commencement of the action or at any time while it was in the possession of the plaintiff. It is said that a party injured may waive the tort and maintain assumpsit. But the defendant has the right to reply that there has been no tort, there is nothing to waive; the land is mine, not yours. And whether it belongs to one or the other cannot be tried in an action of assumpsit. The principle is that title to land cannot be tried *ex directo* in a transitory action. An action in any of these forms relating to property severed from the freehold cannot be maintained when the plaintiff can make title to the chattel only by making title to the land from which it is severed. *Powell* v. *Smith*, 2 Watts, 126, *Washburn* v. *Cutter*, 17 Minn. 361; *Baker* v. *Howell*, 6 S. & R. 481.

*Savage & Purdy*, for respondent.

The appellant had waived his objection to the counterclaim as such by making no objection until the close of defendant's testimony. This is the reason on which the court has based its order for a new trial, and it is sufficient. *Brady* v. *Brennan*, 25 Minn. 210; *Warner* v. *Foote*, 40 Minn. 176; *Lace* v. *Fixen*, 39 Minn. 46.

When the owner of property which has been tortiously converted, waives the tort and elects to sue upon an implied agreement to pay for the property taken, the cause of action is upon contract, and comes within the terms of the statute concerning counterclaims. 1878 G. S. ch. 66, § 97, subd. 2; Pomeroy, Remedies, § 568; *Isaacs*

v. *Hermann,* 49 Miss. 449; *Starr Cash Car Co.* v. *Reinhart,* 2 Misc. (N. Y.) 116; *Walker* v. *Duncan,* 68 Wis. 624; *Gordon* v. *Bruner,* 49 Mo. 570; *Norden* v. *Jones,* 33 Wis. 600; *Andrews* v. *Artisans' Bank,* 26 N. Y. 298.

The implied promise is available in the case of personal property severed from land. *Rowell* v. *Rees,* 7 A. & E. 426; *Jones* v. *Hoar,* 5 Pick. 285; *Halleck* v. *Mixer,* 16 Cal. 574; *Budd* v. *Hiler,* 27 N. J. Law, 43.

The learned judge in the trial court criticised the form in which the counterclaim was pleaded, although he considered all objection on that score as waived by the plaintiff. We believe that in pleading an implied contract of sale it was proper to plead its legal effect rather than the evidentiary facts. *Curtiss* v. *Livingston,* 36 Minn. 380; *Walker* v. *Duncan,* 68 Wis. 624; *Barnes* v. *McMullins,* 78 Mo. 260.

COLLINS, J. The complaint herein was in assumpsit to recover the value of materials furnished and labor and services rendered and performed by plaintiff for defendant. The answer, after putting in issue the value of the materials, labor, and services, set forth, by way of counterclaim, that defendant was the owner of certain described real property; that, between specified dates, plaintiff bought and received from him, and excavated, quarried, and removed from said premises, a specified quantity of stone, of an alleged value largely in excess of the amount demanded in the complaint. The reply put in issue the averments as to the counterclaim, and thus denied, among other things, that defendant was the owner of the real estate described in his answer. At the close of defendant's proofs in respect to his counterclaim, the jury were instructed to disregard it, and to return a verdict for plaintiff as demanded in the complaint, which was done. The cause comes before us on a bill of exceptions, an appeal having been taken from an order granting defendant's motion for a new trial.

It appeared from the testimony produced in support of the counterclaim that defendant had the paper title to the land described in his answer; that plaintiff had entered upon it, quarried and removed a large quantity of stone, selling a part and using the bal-

ance himself. The defendant made no effort to show an express contract under which plaintiff went upon the land, or quarried or removed the stone. He sought to maintain his counterclaim by waiving the tort, and by relying upon an implied contract, and no objection to this seems to have been made until defendant rested. But we do not think that from the evidence it clearly appeared, before defendant rested his case, that he intended to rely wholly upon a tort and his waiver of it. This being so, plaintiff's counsel did not lose or waive their right to object when defendant rested; and in this respect the case differed from *Brady* v. *Brennan*, 25 Minn. 210, and *Warner* v. *Foote*, 40 Minn. 176, (41 N. W. 935.)

It is defendant's position that assumpsit will lie for the value of property severed by another person from his realty, and then taken away from the freehold by the latter; that the owner of property thus tortiously converted may waive the tort, and elect to sue upon an implied agreement on the part of the wrongdoer to pay what the property is reasonably worth. The action then becomes as upon contract, and is brought within the terms of the statute concerning counterclaims. But conceding this to be true, in a general sense, it does not follow that such a rule is applicable in all cases. The defendant here, when pleading his counterclaim, had alleged ownership of the land on which the trespass was said to have been committed, and this allegation of ownership had been controverted and put in issue by the reply. Under the allegations of the reply the plaintiff could show that he, and not defendant, owned the land, so that the case was essentially different from one in which there was no question as to which was the owner of the real property involved. The settled principle is that title to land cannot be tried *ex directo* in transitory actions. *Washburn* v. *Cutter*, 17 Minn. 361, which was an action in replevin to recover logs which had been severed from the freehold and taken away, is an authority upon this point. See, also, *Nash* v. *Sullivan*, 32 Minn. 189, (20 N. W. 144.) So that, in order to maintain assumpsit for the value of the stone excavated from the soil and converted by plaintiff, the defendant must have had the actual or constructive possession of the land, in addition to his paper title. If the series of acts in which the excavating and severing of the stone from the soil, the taking away from the freehold, and the conversion have occur-

red, were sufficient to create an adverse possession in plaintiff, assumpsit for their value could not be maintained, for that would directly involve the trial of title to the land, and hence the counterclaim could not stand. Conceding, therefore, that if defendant was in actual or constructive possession of the land he could waive the tort, and recover on his counterclaim upon the implied promise, the inquiry is as to what was disclosed upon the trial in respect to plaintiff's possession. It was simply shown that for five or six years, commencing in 1886, plaintiff had worked the quarry and taken out stone. Nothing further than this was shown. The character of the land, or to what extent it was occupied by plaintiff when taking out the stone, or for what part of each year, or what visible signs there were of his occupancy, was not made to appear. Giving this evidence its full effect, it is apparent that it was not such as to require a verdict that plaintiff was in adverse possession as against defendant. It follows that the court below ruled correctly when granting defendant's motion for a new trial, if his position as to the availability of the counterclaim is sustainable.

There seems to be no difference of opinion upon the proposition that a mere naked trespass, although creating a liability for damages, cannot be the basis of an implied assumpsit. Its basis is the benefit which the wrongdoer has received. Therefore, the action of assumpsit is not to recover damages for the tort, but to recover the value of that which the wrongdoer has appropriated to his own use, the law implying a promise to pay its reasonable value. And formerly it was universally held—and is still held in many jurisdictions—that the right to waive a tort and to sue on an implied assumpsit must be limited to cases where goods and chattels have been wrongfully taken and sold by the wrongdoer. The owner might then disaffirm the act, and, treating him as a wrongdoer, sue in trespass, or he might affirm the act, and, treating the wrongdoer as an agent, claim the benefit of the transaction. When we go beyond this proposition, there is a square conflict of opinion, as is stated in an article from the pen of Judge Cooley. 3 Alb. Law J. 141. But certain it is that the rule has been extended to cases where there has been a wrongful conversion of property of one person to the use of another, whether sold or not by the latter, and also to cases where a trespasser has severed trees from land in pos-

session of the owner, or has quarried stone thereon, and has afterwards taken the trees or stone away, converting the same to his own use, so that trover or replevin might be maintained. That the doctrine has been greatly developed and extended in application is apparent, and that in cases where property has been severed from real estate by a wrongdoer, carried from the freehold, and converted to his own use, the rightful owner may sue and recover its value as on implied contract, is thoroughly established, although it may not be in harmony with the principles of the reformed system of pleading. No reason exists why, if permissible at all, it should not include cases arising out of trespass, to the extent that the property severed and carried away is beneficial to the trespasser, except where it would involve a trial of title to real estate.

It being established that an injured party may elect between the two forms of remedial proceedings,—may sue in tort for the wrong done him, or in assumpsit as upon an implied contract,—it follows that by waiving the tort the demand may be counterclaimed against a plaintiff's cause of action arising on another contract, or, where itself set up by a plaintiff as arising on contract, it may be opposed by a counterclaim arising out of another contract. Pom. Rem. & Rem. Rights, § 801; 22 Am. & Eng. Enc. Law, p. 389, and cases cited in notes.

As has been stated, the answer averred that plaintiff had been licensed to quarry and remove the stone, while from the proof it is apparent that he was simply a trespasser. In view of future proceedings, it is incumbent upon us to say that there was a material variance, in proving a trespass instead of a license, but this variance was waived by plaintiff's failure to object to the evidence on that ground. The right to waive the tort and to recover as on implied assumpsit is an exception to the principles of code pleading, and there must be no extension beyond what is allowed at common law. On this point the case is brought directly within the rule governing in *Hurley* v. *Lamoreaux*, 29 Minn. 138, (12 N. W. 447.)

Order affirmed.

Buck, J., absent, took no part.

(Opinion published 59 N. W. 981.)