ARIZONA COMMERCIAL MINING COMPANY *vs.* IRON CAP
COPPER COMPANY.

SAME *vs.* SAME.

Suffolk.  May 19, 1919. — September 17, 1919.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Jurisdiction.  Equity Jurisdiction.*

The courts of this Commonwealth will not take jurisdiction of a suit in equity be-
tween two mining corporations, both organized in another State and operating
adjoining mines in still another and distant State, which involves the title of
the plaintiff to the mines alleged to belong to it from which the defendant took
large amounts of ore of great value alleged to have been taken wrongfully.

Nor will the courts of this Commonwealth take jurisdiction of a suit in equity
between the parties above described, where it is alleged that the mines of the
plaintiff and the defendant have a common ingress of water and by reason of
subterranean communication of water have a common drainage and that, in order
that either of the mines can be worked, it is necessary to pump water from both
mines, and where the plaintiff's alleged right to relief depends on the enforce-
ment of a statute of the distant State providing that, if by reason of the failure
of the owner of an adjoining mine to provide for the drainage thereof the owner
of a mine is compelled to pump or drain the water from such adjoining mine, he
can recover from the owner of such adjoining mine such owner's proportion of
the expense of such pumping and draining.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court, as
amended, on February 20, 1919, each by the Arizona Commercial
Mining Company against the Iron Cap Copper Company, both
being corporations organized under the laws of the State of Maine,
having a place of business in Boston and conducting mining
operations in the State of Arizona.

The allegations of the bills are described in the opinion.  In
each case the defendant filed a plea to the jurisdiction of the
subject matter of the suit and also in each case demurred to the
bill for want of jurisdiction.

In the first suit, called the "ore suit," the plea contained the
following paragraph:

"That a competent court or competent courts exist within the
State of Arizona having full jurisdiction to determine and adju-

dicate as between the plaintiff and the defendant the question of the title or ownership of the veins, lodes and ledges in said State of Arizona, the title or ownership of which is or may be in controversy between the plaintiff and the defendant, and any other questions material to the determination of the issues raised by the plaintiff's bill as amended."

In the second suit, called the "water suit," the plea quoted certain sections from the Revised Statutes of Arizona, 1913, including the following:

"Section 4047: Whenever adjacent or contiguous mines, occupied and worked upon the same or upon separate lodes have a common ingress of water or by reason of subterranean communication of water have a common drainage, it shall be the duty of the owners, lessees or occupants of said mine so related, to provide for their proportionate share of such drainage, or to prevent the water in such mine from flowing in or upon neighboring mines, thereby imposing upon them an unjust burden.

"Section 4048: If any owners, lessees or occupants of any such mine shall fail or neglect to provide for the drainage thereof, and by reason of such failure or neglect, the owners, lessees or occupants of any adjacent or contiguous mine are compelled to pump or drain or otherwise provide for the water flowing in from such first mentioned mine, then, and in such event the owner, lessees or occupants of the mine so in default, shall pay, respectively, to those performing the work of drainage their proportion of the actual and necessary cost and expense of pumping, draining or otherwise providing for said water, and if they fail or refuse to make such payment, the same may be recovered by an action in any court of competent jurisdiction."

The cases were heard together upon the pleas and demurrers by *Braley*, J., who at the request of the parties reported them for determination by the full court.

The cases were submitted on briefs.

*B. E. Eames & W. C. Rice*, for the defendant.

*E. F. McClennen*, for the plaintiff.

CROSBY, J. These cases are reported to this court by a single justice, upon the bills as amended and the defendant's demurrers and pleas to the jurisdiction. The plaintiff and the defendant are corporations organized under the laws of the State of Maine;

each conducts mining operations in the State of Arizona and has a place of business in Boston.

The first or "ore" suit, so called, is brought to recover a debt for money had and received by the defendant to the use of the plaintiff for ores, which the plaintiff alleges were its property and were converted and sold by the defendant, and which came from portions of veins of ore owned by the plaintiff, who seeks to reach and apply to the payment of its debt the notes, stock and bonds referred to in the bill and to require the defendant to pay the plaintiff the proceeds received from such sales and to enjoin permanently the defendant from continuing to convert the plaintiff's ore. The bill alleges that the mining properties of the plaintiff are contiguous to and adjoin the properties claimed to be owned by the defendant; and that the plaintiff had the right of possession and took and had at all times in question the actual possession of the veins from which the ores described in the bill were extracted and sold by the defendant.

The bill also alleged that the amount of ore so converted and sold by the defendant is in excess of two hundred and fifty thousand tons, and that the amount received to the plaintiff's use from such sales is in excess of $3,000,000; that the defendant has no property which can be attached or taken on execution in an action at law against it sufficient to satisfy the debt of the defendant to the plaintiff; that the defendant owns and has in its possession in Massachusetts certain promissory notes and bonds made by third parties, and certain shares of stock in other corporations which cannot be reached to be attached or taken on execution in an action at law, and that the plaintiff has no complete or adequate remedy at law.

If it be assumed that a personal or transitory action as distinguished from one merely local will lie to recover the value of the ores converted and sold by the defendant, (although the title to the veins from which the ore was extracted is involved,) and if it be conceded that the remedy sought is for the recovery of a debt within R. L. c. 159, § 3, cl. 7, as amended by St. 1910, c. 531, *Ginn* v. *Almy*, 212 Mass. 486, *H. G. Kilbourne Co.* v. *Standard Stamp Affixer Co.* 216 Mass. 118, the question remains whether, upon the facts as disclosed by the record, our courts will permit the suit to be maintained here or should decline to take jurisdiction.

In the second or "water suit," so called, the bill alleges that the plaintiff and the defendant occupy and operate mines in the State of Arizona which are adjacent to each other, that the plaintiff and the defendant have occupied and operated their respective mines continuously for more than six years last past, that these mines have a common ingress of water, and by reason of subterranean communication of water have a common drainage, and in order that the parties may work either of the mines it is necessary to pump water from both mines; that during all the period above referred to a statute known as "Revised Statutes of Arizona, 1913," has been in force in the State of Arizona, §§ 4047 and 4048 being set forth in full in the bill. Other sections of the statute pertinent to the questions involved are set forth in the defendant's plea.

The bill also alleges that by reason of the failure of the defendant to provide for the drainage of its mine the plaintiff has been compelled to pump and drain the water flowing in from the defendant's mine and has expended as the necessary cost of such pumping and draining a sum in excess of $250,000; and that the defendant's proportion of that expense is in excess of $150,000, which the plaintiff seeks to recover in this suit as a debt due to it from the defendant. The remaining allegations of the bill are similar to those contained in the bill in the first suit hereinbefore referred to.

If it be assumed in this case that the obligation created by the statute of Arizona gives the plaintiff a remedy which can be enforced in our courts, and that the plaintiff's claim is a debt within R. L. c. 159, § 3, cl. 7, as amended by St. 1910, c. 531, which may be reached and applied to the plaintiff's demand, the question arises, as in the first case, whether the plaintiff should be allowed to pursue the cause of action here, or our courts should decline to take jurisdiction.

It does not appear that the alleged debt in either case has been reduced to judgment. The parties plaintiff and defendant are both non-residents. The courts of equity in this State are not open to them as matter of right but only as matter of comity. The rule under these circumstances is well established by numerous decisions. It is stated by this court in *National Telephone Manuf. Co. v. DuBois,* 165 Mass. 117, at page 118, in these words: "If it appears that complete justice cannot be done here, or that the amount in-

volved is small and the defendant will be subjected to great and unnecessary expense and inconvenience, and that the investigation required will be surrounded, if conducted here, with many and great if not insuperable difficulties, which will all be avoided without especial hardships to the plaintiff if suit is brought against the defendant in the State where he lives and where the alleged debt was contracted and where personal service can be made on him, we think that our courts should decline to take jurisdiction." *Smith* v. *Mutual Life Ins. Co. of New York*, 14 Allen, 336, 343. *Hancock National Bank* v. *Ellis*, 172 Mass. 39, 46. *Electric Welding Co. Ltd.* v. *Prince*, 195 Mass. 242, 256. *Rackemann* v. *Taylor*, 204 Mass. 394, 403. *Nashua River Paper Co.* v. *Hammermill Paper Co.* 223 Mass. 8, 18. *Richards* v. *Security Mutual Life Ins. Co.* 230 Mass. 320, 322. See also *Pierce* v. *Equitable Life Assurance Society*, 145 Mass. 56; *Peters* v. *Equitable Life Assurance Society*, 196 Mass. 143; *Converse* v. *Ayer*, 197 Mass. 443.

In the first case the plaintiff to recover must prove title to the ore alleged to have been converted and sold by the defendant. To establish that contention involves proof of the mining laws of Arizona and relates to a peculiar kind of real estate differing from that commonly litigated in our courts. Proof of the issues of fact involved would seem to be extremely difficult and expensive with witnesses at so great a distance. It is manifest that the defendant will be subjected to great and unnecessary expense if compelled to litigate these cases, and that the trials thereof will be accompanied by difficulties which can be avoided without apparent hardship to the plaintiff if it brings these suits in the courts of Arizona. In addition it appears that the remedy which the plaintiff seeks in the second or "water suit" is founded upon certain statutes of Arizona that relate to the operation of mines in that State which require the removal of water therefrom. A plausible argument can be made that the remedy given by the statutes is merely local. If that is the correct construction of the statute (which we need not determine in view of the conclusion reached), the remedy must be sought in the courts of Arizona. *Post & Co.* v. *Toledo, Cincinnati, & St. Louis Railroad*, 144 Mass. 341, 345. *Hancock National Bank* v. *Ellis*, 166 Mass. 414, 418. *Kimball* v. *St. Louis & San Francisco Railway*, 157 Mass. 7. The nature of the issues likely to be involved are such as may make

a view of the premises involved highly desirable if not essential in the determination of the cases.

The conclusion reached is in harmony with the decision in *Howarth* v. *Lombard,* 175 Mass. 570, in which it is stated that if the right "is of such a kind that, with a due regard for the interests of the parties, a proper remedy can be given only in the jurisdiction where it is created, it will not be enforced elsewhere." For the reasons stated and because it is extremely doubtful whether our courts are capable of doing complete justice to the parties, we are of the opinion that this court should decline to take jurisdiction in either suit. *New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349, 353. *Post & Co.* v. *Toledo, Cincinnati, & St. Louis Railroad, supra.*

The language of this court in *Smith* v. *Mutual Life Ins. Co. of New York,* 14 Allen, 336, at page 343, seems pertinent to the cases at bar. Mr. Justice Wells there said, "But aside from the question of power depending on the right of jurisdiction, we regard it as within the province of this court, sitting as a court of equity, in its discretion, to decline to exercise jurisdiction in such cases; referring parties to the tribunals of the State upon whose laws their relations and rights particularly depend, and where alone they can be effectually and properly administered."

In reaching this conclusion we are not unmindful of nor unsympathetic with the modern tendency to assume jurisdiction as matter of comity, when reasonably practicable, of causes of action arising in other jurisdictions. See, for example, *Stone* v. *Old Colony Street Railway,* 212 Mass. 459, 464, 465, and *Hanlon* v. *Frederick Leyland & Co. Ltd.* 223 Mass. 438, 440, 441.

It results that in each case the plea should be sustained and the bill dismissed without prejudice.

*So ordered.*

---

## MEMORANDUM.

On the twenty-fourth day of September, 1919, the Honorable Charles Francis Jenney, who had been one of the Justices of the Superior Court since the first day of December, 1909, was appointed a Justice of this court, first taking his seat with the full court at Worcester on the twenty-ninth day of September, 1919.