ARIZONA COMMERCIAL MINING COMPANY *vs.* IRON CAP
COPPER COMPANY.

SAME *vs.* SAME.

Suffolk.   March 11, 12, 1920. — June 23, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Jurisdiction,* Local action.   *Mineral Lands.*   *Constitutional Law,* Equal protection of the laws, Equal privileges to citizens of different States.

In the declaration in an action of contract or tort between two mining corporations not incorporated in this Commonwealth, the plaintiff alleged that it owned certain mining properties in the State of Arizona and had the right to take ore from every vein, lode and ledge having its apex inside the surface lines of the plaintiff's land extended downward and throughout their entire depth although they might so far depart from the perpendicular as to extend outside of the side lines of such surface boundaries; that the defendant had taken ore from veins, lodes and ledges which had their apexes within the plaintiff's surface boundaries and had received money therefrom. The declaration excluded any claim for damage to the plaintiff's realty and was drawn for conversion of the ore as personal property and for money had and received from its sale as personal property. In an answer in abatement the defendant alleged that it had not taken any ores except from real estate to which in good faith and at all times openly and to the knowledge of the plaintiff it had claimed ownership and title, that such ore as it had taken had been from veins, lodes and ledges under lands and claims owned by it and within their surface boundaries extended downward vertically, that it at all times had been in possession of the entire surface of such lands and of the mining operations beneath the surface to the complete exclusion of the plaintiff, and that its extraction of the ore had been open, to the plaintiff's knowledge and under a claim of title made in good faith. The answer in abatement was heard upon the understanding of the judge and the parties that, for the purposes of the hearing, the facts therein alleged were assumed to be proved. *Held,* that

(1) The record presented a cause arising out of a *bona fide* dispute as to the title to real estate, where the primary question involved was the title;

(2) The courts of this Commonwealth will not take jurisdiction of such an action, it being one local to the State of Arizona;

(3) Such a determination violates no constitutional right of the plaintiff given either by art. 14 of the Amendments to the Federal Constitution, or by art. 4, § 2, of that Constitution.

The rule that, where a trespasser severs wood, gravel or other parts of the realty from land and transfers it into money, the owners of the land may waive the trespass and maintain an action of contract against the wrongdoer for money had and received, does not apply where the owner has been disseised or where there is an honest controversy between the parties as to who is the owner of the

land; but in such circumstances the owner must seek to enforce his rights in a court vested with jurisdiction to try the title to the land as a local action.

Statement by RUGG, C. J., of the reasons for the distinction between local and transitory actions.

The courts of this Commonwealth will not take jurisdiction of an action of contract under §§ 4047, 4048 and 4051 of the Rev. Sts. of the State of Arizona (1913), between the owners of adjacent mines in that State, to compel the payment of a proportionate part of the expense of pumping water from the defendant's mine, such action being local in its character.

CONTRACT OR TORT, (hereinafter called "The Ore Action") begun by trustee process, by a corporation incorporated under the laws of the State of Maine and having a usual place of business in Boston against a corporation also organized under the laws of the State of Maine and having a usual place of business in Boston, the subject matter of the action being a controversy as to the ownership of certain ore extracted by the defendant from mines in the State of Arizona. Writ dated September 23, 1919. Also an action of

CONTRACT, (hereinafter called "The Water Action") by the same plaintiff against the same defendant under a statutory provision of the State of Arizona, quoted below, for a proportion of the expense of pumping water from the defendant's mines in Arizona, which were adjacent to the plaintiff's. Writ dated September 23, 1919.

The defendant filed an answer in abatement and a demurrer in each action. The pleadings are described in the opinion.

The actions were heard together by *Hammond*, J., upon the defendant's demurrers and answers in abatement without the introduction of any evidence, and upon the understanding of the judge and the parties that for the purpose of this hearing the facts alleged in the answers in abatement were assumed to be proved.

The judge sustained the demurrers, adjudged the answers in abatement good and ordered that the actions be dismissed for want of jurisdiction; and the plaintiff alleged exceptions.

Rev. Sts. of Arizona of 1913, §§ 4047, 4048 and 4051, were alleged in the declaration and in the answer in abatement in "The Water Action" to be as follows:

"Section 4047. Whenever adjacent or contiguous mines, occupied and worked upon the same or upon separate lodes have a

common ingress of water or by reason of subterranean communication of water have a common drainage, it shall be the duty of the owners, lessees or occupants of said mines so related to provide for their proportionate share of such drainage, or to prevent the water in such mine from flowing in or upon neighboring mines, thereby imposing upon them an unjust burden.

"Section 4048. If any owners, lessees or occupants of any such mine shall fail or neglect to provide for the drainage thereof, and by reason of such failure or neglect, the owners, lessees or occupants of any adjacent or contiguous mine are compelled to pump or drain or otherwise provide for the water flowing in from such first mentioned mine, then, and in such event the owner, lessees or occupants of the mine so in default, shall pay, respectively, to those performing the work of drainage their proportion of the actual and necessary cost and expense of pumping, draining or otherwise providing for said water, and if they fail or refuse to make such payment, the same may be recovered by an action in any court of competent jurisdiction."

"Section 4051. When an action is commenced, as provided herein, to recover the costs and expenses for draining a lode or mine, it shall be lawful for the plaintiff to apply to the court for an order to inspect and examine the lodes or mines claimed to have been drained by the plaintiff, and upon affidavit that such inspection or examination is necessary for a proper preparation of the case for trial, the court shall grant an order for the underground inspection and examination of the lode or mine described in the petition. Such order shall designate the number of persons, not exceeding three, besides the plaintiff or his representative, who may examine and inspect such lode and mines, and take measurements for the purpose of showing the amount of water taken from the lode or mine or the number of fathoms of ground mined and worked out of the lode or mines claimed to have been drained, the cost of such examination and inspection to be borne by the party applying therefor. The court shall have power to cause the removal of any rock, debris, or any other obstacle in any lode or vein when such removal is shown to be necessary to a just determination of the question involved: provided, that no such order for inspection and examination shall be made except upon notice of at least three days, nor unless it appears that the

plaintiff has been refused the privilege of making the examination by the defendant, his or their agent."

*E. F. McClennen,* for the plaintiff.

*B. E. Eames,* for the defendant.

RUGG, C. J.   These are actions at law with counts in contract and in tort.   In each case the defendant filed a demurrer and also an answer in abatement.   In the Superior Court the demurrers were sustained and the answers in abatement adjudged good and the actions were dismissed for want of jurisdiction.

The plaintiff and the defendant each is a corporation organized under the laws of Maine, conducting mining operations in Arizona and having a usual place of business in this Commonwealth.

### THE ORE ACTION.

The declaration in the ore action so called alleges that the plaintiff is the owner in fee simple in possession of mining properties in Arizona, its title being derived from patents from the United States issued under mining laws whereby the plaintiff acquired the right to and took and has ever retained possession of all mineral veins, lodes and ledges throughout their entire depth, the top or apex of which lie inside of the surface lines of said claims extended downward although such veins, lodes or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations; that the defendant has been in possession of a certain mining shaft whereby it has taken and converted to its own use large amounts of ore from veins, lodes and ledges which had their respective tops or apexes upon mining claims owned by the plaintiff and wholly within the plaintiff's surface lines and in the actual possession of the plaintiff, and has sold and received large sums of money therefor.   The declaration, while asserting a title to land in Arizona, is drawn for conversion of the ore as personal property and for money had and received from the sale of the same as personal property, and expressly excludes claim for damage to the realty in Arizona.

The answer in abatement avers that the defendant has not taken any ores claimed by the plaintiff except ores extracted from real estate in Arizona to which the defendant in good faith has at all times openly and to the knowledge of the plaintiff claimed

and now claims title and ownership under the laws applicable thereto, and that such ores have been extracted from veins, lodes and ledges underneath the surface of lands and claims owned by the defendant and within surface boundaries thereof projected vertically downward, and that the defendant has been at all times in actual possession of the entire surface and of the mining operations underneath the same to the complete exclusion of the plaintiff, and that its extraction of such ores has been open, to the knowledge of the plaintiff and under claim of title made in good faith. The answer in abatement must be accepted as true upon this record.

Both the plaintiff and the defendant being non-residents of this Commonwealth, considerations which might be pertinent in actions between our own citizens are laid on one side.

The allegations of the declaration appear to be sufficient under general principles of mining law to show title in the plaintiff to the veins or lodes from which the defendant is alleged to have taken ore. The ownership and possession of a vein of ore at the surface of the ground carries with it the ownership and possession of the vein throughout its entire depth although so far departing from a perpendicular as to extend outside the vertical side lines of such surface locations. *Empire State-Idaho Mining & Developing Co.* v. *Bunker Hill & Sullivan Mining & Concentrating Co.* 58 C. C. A. 311, 315; 121 Fed. Rep. 973, 977. *Last Chance Mining Co.* v. *Bunker Hill & Sullivan Mining & Concentrating Co.* 66 C. C. A. 299, 303; 131 Fed. Rep. 579. U. S. Rev. Sts. § 2322. These allegations of the declaration, so far as they concern matters of fact, cannot be treated as admitted for the purposes of this decision in view of the defendant's answer in abatement. That answer in effect avers possession and a *bona fide* claim of title by the defendant. It asserts possession and title directly adverse to the like claims by the plaintiff. At the lowest its averments are sufficient to show possession of that portion of the vein which has been actually worked by the defendant and from which the ore sued for has been extracted. *Hunnicutt* v. *Peyton,* 102 U. S. 333, 368. *Montana Mining Co. Ltd.* v. *St. Louis Mining & Milling Co.* 204 U. S. 204, 216–218. It would be too narrow a construction of the answer in abatement to interpret it as not a denial and therefore an admission of the plaintiff's title

to the ore and to the veins from which it came and the plaintiff's actual possession thereof.

It seems to be settled in mining law that title and possession of the surface of land *prima facie* carries ownership and possession of all beneath the surface, and that such persumption as to minerals may be overthrown by proof that such mineral is a part of a vein apexing in land or claim belonging to some one else. But that is matter of defence. *Lawson* v. *United States Mining Co.* 207 U. S. 1, 8. See *Iron Silver Mining Co.* v. *Cheesman,* 116 U. S. 529; *Del Monte Mining & Milling Co.* v. *Last Chance Mining & Milling Co.* 171 U. S. 55.

The record presents a cause arising out of a *bona fide* adversary dispute as to the title to real estate where the primary question involved is the title. That is the gravamen of the action. The plaintiff on the one side and the defendant on the other each asserts title to real estate. The settlement of that dispute will determine the title to the ore. The only way in which title to the ore can be decided is by settling the dispute as to the title to the land. The action in its essential feature concerns title to real estate and that alone. The title to the personal property is incidental to that main factor and will follow necessarily from the adjudication of the land title. Where the defendant is in adverse possession of the realty under a *bona fide* claim of title, authorities hold that the thing severed becomes his property, so that the owner of the land cannot maintain trover therefor but must resort to his remedy for possession. *Lehigh Zinc & Iron Co.* v. *New Jersey Zinc & Iron Co.* 26 Vroom, 350, 357. *Bigelow* v. *Jones,* 10 Pick. 161. *Duppa* v. *Mayo,* 1 Saund. 285. See R. L. c. 179, § 12.

The owner of land may waive the trespass and, affirming the conversion, sue, in an action for money had and received, one who severs wood, gravel or other parts of the realty from his land and transforms it into money. *Jones* v. *Hoar,* 5 Pick. 285, 290. *Gilmore* v. *Wilbur,* 12 Pick. 120. *Riley* v. *Boston Water Power Co.* 11 Cush. 11. *Phillips* v. *Bowers,* 7 Gray, 21. *Anderson* v. *Todesca,* 214 Mass. 102. It has been decided, however, that he can do this only when the title to the land is not in dispute between the parties. Where there is honest controversy whether the plaintiff or the defendant is owner of the title, or

where the owner has been disseised, then an action for money had and received cannot be maintained for severed wood or other realty. *Miller* v. *Miller,* 7 Pick. 133, 136. *Bigelow* v. *Jones,* 10 Pick. 161. *Brigham* v. *Winchester,* 6 Met. 460. These cases were cited with approval in *Pickman* v. *Trinity Church,* 123 Mass. 1. It there was said at pages 5 and 6 that "The law is indeed well settled that such title [that is, the title to real estate] cannot be tried in an action for money had and received." That rule "does not prevent an action for money had and received in many cases which require an investigation of title. . . . The reasons upon which the rule is founded apply only when the parties to the suit claim the land by adverse titles." This last statement is precisely applicable to the facts here disclosed. In *Boston* v. *Binney,* 11 Pick. 1, 9, are found these words: "It is said that a party injured may waive the tort and maintain assumpsit. But the defendant has a right to say to the plaintiffs, 'there has been no tort; you have nothing to waive; the land is mine, not yours.'" This is in substance the contention of the present defendant according to its answer in abatement. The case at bar appears on this record to be one where the parties as between themselves are at issue concerning adversary titles to the same land. The decision of that issue will put an end to their controversy.

There is nothing discordant with these views in *Parks* v. *Loomis,* 6 Gray, 467, where the defendant did not claim title to the land, and as between the parties to that action the title to the land was "collateral and incidental." The same is true of *Schulenberg* v. *Harriman,* 21 Wall. 44. In *Rogers* v. *Woodbury,* 15 Pick. 156, the issues made by the pleadings did not involve title to land.

Some cases seemingly assume that it is merely a question of pleading and that, if the cause of action is technically stated in trover or conversion and does not include an averment of injury to realty as a cause of action, then the action is transitory in its nature. *United States* v. *Ute Coal & Coke Co.* 85 C. C. A. 302; 158 Fed. Rep. 20. *Montana Mining Co. Ltd.* v. *St. Louis Mining & Milling Co. of Montana,* 105 C. C. A. 343; 183 Fed. Rep. 51. The difficulty, however, is more fundamental than one of pleading. Here, as in most cases, the court must look through form to substance. The inquiry is whether in its essence the real and decisive point at issue between the parties is a genuine controversy

as to the title to land, touching which their respective contentions are directly adversary. If the cause of action is in truth based upon such a controversy, then it is not a transitory action.

The distinction between local and transitory actions is not fanciful nor technical. It is founded on a keen sense of justice. An action at law involving essential characteristics of land ordinarily can be tried with a stronger likelihood of ascertaining the truth and doing right between the parties in a jurisdiction where the land is situated than in a foreign State. In the vicinity the nature of the land can be understood, the evidence bearing upon its title be presented conveniently, its properties and adaptability for valuable use comprehended, the elements of damage to it ascertained, its essential features recognized, and their accurate worth established in every and in all respects much better than at a distance. See *British South Africa Co.* v. *Companhia De Mocambique,* [1893] A. C. 602. The ground is especially firm, when the fundamental issue relates to such complicated real estate law as that pertaining to mines, for holding that an action will not be entertained by a court of a jurisdiction other than that where land lies. While the reasons, according to which a real action is held to be local rather than transitory, are largely historical, *Allin* v. *Connecticut River Lumber Co.* 150 Mass. 560, there is a strong practical sense for that rule as applied to claims concerning the title to mines. It was said, respecting a claim similar in its ultimate aspects to that here urged, in *Ophir Silver Mining Co.* v. *Superior Court of San Francisco,* 147 Cal. 467, at page 478, that "The trial of the questions necessarily arising in such a case would call for the testimony not only of scientific experts but of many practical experts (miners) who had examined the ground and been through all the tunnels, drifts, etc., by means of which the alleged identity of the croppings in one claim and the ore found in the other could be supported or disproved. A somewhat extensive and varied experience in the trial of such issues in the mining litigation of Nevada convinces me that the practical inconvenience in the way of delay and expense in trying the title to Nevada mines in the State of California would be intolerable to the litigants and equally so to the courts. And the same doctrine which would compel a Nevada miner to litigate the title to his mine in the courts of California would compel the

owner of a California mine to defend his title in the courts of Maine or Florida." These words of Chief Justice Beatty gain weight from his unique distinction of having been Chief Justice of Nevada for a considerable period before holding the same office in California, States where mines are not uncommon.

Other difficulties in assuming jurisdiction of a case of this sort are set forth at length in the opinion in the earlier suit between these parties reported in 233 Mass. 522, and need not be repeated here.

We do not regard the recent decision of the Supreme Judicial Court of Maine, 119 Maine, 213, between the same parties, as essentially at variance with the conclusion here reached, for the reason that the parties are both citizens of that State, which is one of the grounds inducing that court to assume jurisdiction of a cause of action apparently the same as that here alleged.

The principle prevails generally that transitory actions will not be entertained to recover money damages as for the conversion of personal property where the dispute at bottom is one concerning the title to land, but that under such circumstances the parties will be relegated to courts vested with jurisdiction to try the title to the land as a local action. *Downs* v. *Finnegan,* 58 Minn. 112. *Parks* v. *Morris, Layfield & Co.* 63 W. Va. 51, 56, 57. *Brown* v. *Caldwell,* 10 S. & R. 114, 115. *Thomas* v. *Hukill,* 131 Penn. St. 298, 303. *Lindsley* v. *Union Silver Star Mining Co.* 26 Wash. 301. *Mullins Lumber Co.* v. *Williamson & Brown Land & Lumber Co.* 167 C. C. A. 21; 255 Fed. Rep. 645, 647. *Peyton* v. *Desmond,* 63 C. C. A. 651; 129 Fed. Rep. 1. It was assumed in *Tyson* v. *McGuineas,* 25 Wis. 656, 661, that, if the defendant in an action for converting lumber by cutting trees on the land of the plaintiff raised a genuine question as to the title of the land, the action would be local and not transitory. Different considerations might arise if it was apparent that the controversy as to title was feigned and not well founded. *Moret* v. *Mason,* 106 Mich. 340. We are not able to find anything essentially at variance with this conclusion in *Stone* v. *United States,* 167 U. S. 178. It is plain that in that case the defendant did not set up a title to land adverse to that of the plaintiff and that there was no genuine controversy concerning ownership of the land by the United States.

In view of the ground upon which this decision rests, the allegation in the declaration, to the effect that the plaintiff has for its complaints no adequate remedy outside of Massachusetts, cannot be regarded as of decisive significance. It must be assumed that there are courts in Arizona competent to establish the plaintiff's rights to real estate located there. There is an averment to that effect in the answer in abatement.

All these considerations lead to the conclusion that the plea in abatement rightly was adjudged sufficient and that the action should be dismissed.

We are of opinion that this result violates no constitutional right of the plaintiff. It has not been denied the equal protection of the laws secured by art. 14 of the Amendments to the Federal Constitution. Equal protection of the laws in its constitutional sense implies that all litigants similarly situated may appeal to the courts both for relief and for defence under like conditions and with like protection and without discrimination. *Gulf, Colorado & Santa Fe Railway* v. *Ellis*, 165 U. S. 150, 153. *Barbier* v. *Connolly*, 113 U. S. 27, 31. *Chicago, Milwaukee & St. Paul Railway* v. *Polt*, 232 U. S. 165. *Atchison, Topeka & Santa Fe Railway* v. *Vosburg*, 238 U. S. 56. *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 127, 128. In the decision of this case principles of general law have been followed and applied. No discriminatory rule has been invoked not bearing equally upon every litigant similarly situated.

The plaintiff has been denied no right established by art. 4, § 2 of the Constitution of the United States, which affords citizens of each State all the privileges and immunities of citizens in the several States. "A corporation is not a citizen within the meaning of the constitutional provision that 'the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States.'" *Blake* v. *McClung*, 172 U. S. 239, 259. *Western Turf Association* v. *Greenberg*, 204 U. S. 359, 363. *Selover, Bates & Co.* v. *Walsh*, 226 U. S. 112, 126. But here again the contentions of the plaintiff have been considered and decided on principles of general law.

The case is rightly before us on exceptions.

*Exceptions overruled.*
*Appeal dismissed.*

THE WATER ACTION

The declaration in this action is to recover a debt for money expended in this Commonwealth for the defendant's proportion of expense for pumping water from the defendant's mine in Arizona. The action is founded upon §§ 4047, 4048 of the Rev. Sts. of the State of Arizona 1913, which are printed on pages 186, 187. In this case also the defendant demurred and filed an answer in abatement. That answer set forth other sections of the statutes of Arizona as pertinent, among which is § 4051, printed on pages 187, 188. In this case, also, the demurrer was sustained, the answer in abatement adjudged sufficient and the action dismissed.

These sections of the statutes upon which the plaintiff's action is grounded deal with matters in their nature essentially local to Arizona.

The statute itself bears strong implication that it was intended to create a right enforceable by action only in the courts of Arizona. The inspection afforded to the plaintiff by § 4051 manifestly can be enjoined with compelling power only by a court in Arizona. That provision can have no power outside its territory.

It is manifest that title to the several mines is involved in the settlement of the issues raised in this action. The reasons already discussed in the decision of the ore action are to a large extent equally applicable to this action.

The determination of the common ingress of water and subterranean water communications well may necessitate ascertainment with minute exactness of physical features of land both on and underneath the face of the earth and may require examination of surface and subterranean watercourses and channels and other geological aspects of surrounding country as well as of the properties of the parties directly concerned in the litigation. These are questions naturally to be determined by the court of Arizona.

There is a strong analogy between a case like the present and actions for damage by flowage or diversion of water which commonly have been counted local either to the jurisdiction where the damage is done or that where the obstruction is erected. *Barden* v. *Crocker*, 10 Pick. 383. *Mannville Co.* v. *Worcester*, 138 Mass. 89. Moreover, there are present here in addition factors

enumerated in *National Telephone Manuf. Co.* v. *DuBois,* 165 Mass. 117, and affirmed in the earlier suit between these parties, 233 Mass. 522, as independent reasons for declining to assume equity jurisdiction of a controversy between non-residents, namely, a doubt whether complete justice between the parties can be done here, the imposition upon the defendant of large expense and great difficulties in conducting the investigation in our courts, most of which would be avoided by bringing the action in the forum where the cause arose.

This conclusion is not at variance with cases like *Stone* v. *Old Colony Street Railway,* 212 Mass. 459, 464, 465, *Nashua River Paper Co.* v. *Hammermill Paper Co.* 223 Mass. 8, and *Hanlon* v. *Frederick Leyland & Co. Ltd.* 223 Mass. 438, where the disposition of this court to assume jurisdiction of causes of action wherever practicable has been plainly manifested. It seems to us that cases like *Atchison, Topeka & Santa Fe Railway* v. *Sowers,* 213 U. S. 55, 70, and *Tennessee Coal, Iron & Railroad Co.* v. *George,* 233 U. S. 354, which deal with actions confessedly transitory, are not pertinent to the present issue.

These considerations lead to the conclusion that the statute upon which this action is founded does not authorize a suit in this Commonwealth and that the decision of the Superior Court was right in adjudging the answer in abatement sufficient and in dismissing the action.

*Exceptions overruled.*
*Appeal dismissed.*