Bohn, J.
On February 28, 1994, this Court (Hely, J.) entered an order allowing partial summary judgment in plaintiffs’ favor. Among other things, the Court found that “[t]he defendant entered upon the plaintiffs’ land, removed material, and caused injuries to the plaintiffs’ land. The defendant committed acts of trespass and conversion and violated G.L.c. 242, §7, as alleged in the plaintiffs’ complaint, Counts I through III.”[1] The Court forrad, however, that genuine issues of material fact remained with regard to other issues *591 in the case, including the amount of damages to which the plaintiffs may be entitled.
This matter was again before the Court on February 5, 1998 for a hearing on third-party defendant Amorello’s motion to dismiss. At that time, and again on February 24, 1998 when the parties appeared for a lobby conference, the parties were invited by the Court to submit memoranda of law concerning the measure and calculation of any damages that may be awarded. It was the expectation of the Court and the parties that resolution of the issue of damage might advance the possibility of settlement.
After consideration of the submissions of the parties, this Court is of the opinion that, should they ultimately prevail on the merits of their case, a strong likelihood given Judge Hely’s earlier findings, the Brenemans may be entitled to the diminution in value to their land caused by the creation of wetlands, the burial of waste, and any encroachment by aircraft; the fair market value of the destroyed trees; the fair market value of any gravel removed from their property and used in construction of the runway; and the fair market value of any gravel removed from their property and sold to third parties or the price charged by the defendants at resale to the third parties, whichever is higher.[2]
DISCUSSION
The compensable damage to the Brenemans’ property includes the creation of a wetland, the burial of organic waste, the nuisance created by low-flying aircraft, the destruction of timber, and the removal of gravel. The Brenemans argue that several different measurements of recovery should apply to the different categories of harm.
With regard to the creation of the wetland, the burial of waste and the aircraft nuisance, the Brenemans urge that they can be properly compensated only by the cost of restoring the land to its former character. They therefore seek the cost of removing the wetland, excavating and removing the waste, stabilizing and replanting the property, fencing the property in and obtaining all applicable permits for such work.
The general rule for measuring damage to property is the diminution in market value caused by the defendants’ wrongful acts. Trinity Church v. John Hancock Mutual Life Insurance Co., 399 Mass. 43, 48 (1987). The Brenemans concede that this is the general rule, but argue that diminution in value would not properly compensate them in this case, where the diminution in value to their undeveloped land may be minimal.
While restoration costs may be warranted in some cases,
... a test of reasonableness is imposed. Not only must the cost of replacement or reconstruction be reasonable, the replacement or reconstruction itself must be reasonably necessary in light of the damage inflicted by a particular defendant. In some cases, “to make such a restoration would be an uneconomical and improper way of using the property" and “might involve a very large and disproportionate expense to relieve from the consequences of a slight injury.”
Trinity Church, 399 Mass. 43, 50 (1987), quoting Hopkins v. American Pneumatic Serv. Co., 194 Mass. 582, 584 (1907).[3]
In the instant case, restoration costs would far exceed the harm caused by the defendants’ actions and would therefore fail the test of reasonableness.[4] There is no reason to forego application of the general rule in this case; this Court agrees with the defendants that diminution in the value of the Brenemans’ land would adequately compensate them for these injuries to their property.
With regard to the destruction of the trees and the removal of gravel, however, a different analysis is required. The loss of timber and gravel on undeveloped land cannot be fairly redressed by measuring the diminution in value of the property. Although, as previously stated, the general rule for damage to property is diminution in value, that rule is not universal. The rule will not be applied when diminution in value is inadequate to compensate a plaintiff for his injury. See Trinity Church, 399 Mass. at 48. In the instant case, the damage caused by the defendants’ acts was caused to undeveloped land. While the diminution in value to this raw land (caused by destruction of timber and removal of gravel) may be negligible, the value of the materials taken from the land is not. Moreover, allowing the Brenemans to recover only diminution in value for the loss of trees and gravel would allow the defendants to profit considerably from their wrongdoing.
In bulldozing and clearing the Brenemans’ land, the defendants destroyed valuable timber. “A tortfeasor who severs portions of the realty is liable to the owner for the difference in the value of the land before and after the severance, together with such other elements of damage as result from the severance ... In substitution for damages based on the diminution in value of the land, the owner can elect to recover damages for the value of the things after severance.” Lawrence v. O’Neill, 317 Mass. 393, 397 (1944), quoting Am. Law. Inst. Restatement: Torts 929, comment (e). As diminution in value would not adequately compensate the Brenemans for their loss, they would therefore be entitled to the value of the timber, after it was cut and prior to its burial as waste. See also, G.L.c. 242, §7.
Additionally, the defendants removed a substantial quantity of gravel from the Brenemans’ property; the Brenemans claim that some of that gravel was used by Tanner in constructing his runway and some of the gravel was resold for profit to third parties. The Brenemans seek recovery of the value of any gravel used by Tanner in constructing the runway and the *592 resale price of any gravel that was sold to third parties.[5]
As previously stated, a tortfeasor who removes materials from a plaintiffs land may recover the fair market value of the materials taken. Lawrence, 317 Mass. at 397; see also, Gallagher v. R.E. Cunniff, Inc., 314 Mass. 7, 9 (1943) (one who tortiously removes gravel from another’s property is liable to that person for the fair market value of the gravel removed). The Brenemans are therefore entitled to the fair market value of any gravel used by Tanner in constructing his runway.
With regard to gravel resold to third parties, however, the Brenemans argue that fair market value would not adequately compensate them if the resale price of the gravel is higher than the fair market value. In support of that proposition, they rely on Arizona Commercial Mining Co. v. Iron Cap Copper Co., 236 Mass. 185 (1920), which states that the owner of land may “sue, in an action for money had and received, one who severs wood, gravel or other parts of the realty from his land and transforms it into money.” Id. at 190.
The Brenemans’ argument for profits of any sale to a third party has merit in this particular case. “The owner [of land] may also be entitled to the restitutionary measure of damages based upon the value to the tortfeasor of what he obtained . . . [I]f the defendant is a wilful trespasser, the owner is entitled to recover from him the value of any profits made by the entry.” Am. Law. Inst. Restatement: Torts 929, comment (d). Keeping in mind the maxim that a defendant should not be allowed to profit from his wrongdoing, this Court finds that damages for any gravel sold to a third party should be measured by the resale price of the gravel or the fair market value of the gravel, whichever is higher.
ORDER
It is therefore ORDERED that any damages awarded in this case shall be measured by:
a) The diminution in value of the property resulting from the burial of waste, creation of the wetland and encroachment of aircraft, if any;
b) The fair market value of the trees destroyed;
c) The fair market value of any gravel used in construction of the runway; and,
d) The fair market value of any gravel sold to third parties or the price charged by the defendants at resale to the third parties, whichever is higher.

 The partial summary judgment was entered against defendant Tanner in that, at the time partial summaryjudgment was entered, Amorello had not yet been impleaded as a third-party defendant.

 This Court makes no ruling with respect to the other issues remaining in the case. Additionally, this Court does not rule with regard to any equitable relief sought by the Brenemans, and this decision should not be construed as affecting their right to pursue such relief.

 Trinity Church distinguished itself from other cases, where diminution in value was a proper measure of damages, by the “special purpose property” exception. The property at issue in Trinity Church was built in 1876 and had been designated a historic landmark. Id. at 48-49. The property at issue in the instant case is undeveloped land, with no particular characteristics or “special purpose.”

 The cost of [restoration, however,] would be competent evidence of this [diminution] in value, but the location and physical characteristics of the premises . . . would not warrant charging the defendant [with restoration costs] . . .” Crystal Concrete Corp. v. Braintree, 309 Mass. 463, 471 (1941).

 The profit achieved by the resale of the gravel and the exact amount of gravel removed from the Brenemans’ property are issues that are disputed by the parties.